UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal No. 3:14cr228 (JBA) |
| *v.* | |
| RYAN GEDDES | April 6, 2015 |
| JASON CALABRESE | |
| RICHARD GEDDES, and | |
| DUSTIN WHITTEN | |

**RULING ON DEFENDANT'S PRETRIAL MOTIONS**

Defendant Jason Calabrese moves [Doc. ## 51, 52, 53] to dismiss the Indictment, for a bill of particulars, and for severance of his trial both from the other counts of the Indictment and from the other charged defendants.  For the reasons that follow, the Motion for Severance is granted in part, the Motion for a Bill of Particulars is granted, and the Motion to Dismiss is denied.

**I.     Background**

The seven-count Indictment [Doc. # 1] revolves around allegations regarding Defendant Ryan Geddes's attempt to relieve himself of several debts that he owed by hiding assets from creditors, obtaining money by financial frauds, and obstructing the Government's investigation of these schemes.  Defendant Jason Calabrese is named in only Count One, which alleges that in November 2005, as a "part of the conspiracy," Geddes, Calabrese, and Thomas Provenzano, who was separately charged, agreed to a "straw sale" of 27 Palmer Road in Morris, Connecticut to Mr. Provenzano from Mr. Geddes, who "effectively owned" the property through a company that he controlled, United Development Group LLC.  (*Id.*  ¶¶ 10, 18a.)  The coconspirators are alleged to

have submitted a loan application that falsely portrayed Mr. Provenzano as a highly-paid executive at a company owned by Mr. Geddes, which enabled him to obtain a mortgage on 27 Palmer Road.  (*Id.* ¶ 12.)  Mr. Calabrese, who is a mortgage broker, received a broker's fee from the transaction and Mr. Geddes received a large cash payout, some of which he shared with Mr. Provenzano and some of which he used to pay off several liens and a prior mortgage on the property.  (*Id.* ¶¶ 2, 13.)

In November 2006, Geddes, Calabrese, and Provenzano are alleged to have submitted a false mortgage refinancing application for the property in order to defraud World Savings Bank, a federally insured bank, again falsely stating that Provenzano was a highly-paid executive.  (*Id.* ¶ 14.)  The proceeds of the World Savings Bank refinancing were used to pay off the November 2005 mortgage and to finance an additional broker's fee for Mr. Calabrese.  (*Id.* ¶ 15.)  In July 2007, Calabrese and Provenzano are alleged to have prepared a mortgage refinancing application for another property, 669 Goshen Road in Torrington, Connecticut, a property occupied by Provenzano, which again misrepresented that he was a highly-paid executive and resulted in a broker's fee for Mr. Geddes and defrauded World Savings Bank.  (*Id.* ¶¶ 16–18, 20.)

Count One charges conspiracy to commit bank fraud in violation of 18 U.S.C. § 1349.  Mr. Calabrese is not charged in the remaining six counts of the Indictment. Count Two alleges that Geddes and Provenzano conspired to obstruct justice when in 2010 they provided federal agents investigating the November 2005 financing of 27 Palmer Road (charged in Count One) with a false, backdated promissory note purporting to show that Provenzano arranged to pay the required $249,000 down payment when in fact he never made any such arrangements.  (*Id.* ¶¶ 22–25.)  Count Three charges wire

fraud and alleges that in December 2009, Ryan Geddes, Thomas Provenzano, Dustin Whitten and Richard Geddes, conspired to defraud a title insurance company by obtaining title insurance on 66 Donahue Road Extension in Litchfield, Connecticut, a property "effectively owned" by Ryan Geddes.  A defective title search was prepared for the title insurance application, omitting liens on the property, and after the property was conveyed in a straw sale, a subsequent title search was to be performed, revealing the omitted liens and resulting in a payout from the insurance company.  (*Id.* ¶¶ 30–39.)

Counts Four through Six charge a bankruptcy fraud conspiracy and two counts of bankruptcy false statements, alleging that the straw sale of 66 Donahue Road charged in Count Three was intended to defraud Ryan Geddes's creditors in bankruptcy because he continued to reside at the property and failed to disclose that he owned the property in two sworn asset schedules filed in his bankruptcy proceeding.  (*Id.* ¶¶ 41–49.)

Count Seven charges conspiracy to commit mail and wire fraud and alleges that in May 2009 Ryan Geddes made a straw transfer of an undeveloped parcel of real property in New York that he "effectively owned" to Dustin Whitten when in fact Geddes continued to own and reside at the property.  After Geddes built and then occupied a residence on the property, in March 2011, he and Whitten obtained a homeowner's insurance policy for the residence in the name of Whitten and later set fire to the property so that Whitten could collect insurance proceeds, falsely representing himself to be the owner of the property.  (*Id.* ¶¶ 50–56.)

## II.      Discussion

### A.      Motion to Dismiss

"It is well settled that 'an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'" *United States v. Alfonso*, 143 F.3d 772, 776 (2d Cir. 1998) (quoting *Hamling v. United States,* 418 U.S. 87, 117 (1974)).   Although "an indictment must 'charge[] a crime with sufficient precision'" to satisfy these two requirements, it "need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *Id.* (quoting *United States v. Stavroulakis,* 952 F.2d 686, 693 (2d Cir. 1992)) (alterations in original).   "[T]he government need not particularize all of its evidence."   *United States v. Cephas*, 937 F.2d 816, 823 (2d Cir. 1991).

"Unless the government has made what can fairly be described as a full proffer of the evidence it intends to present at trial . . ., the sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss an indictment" and the allegations in the indictment must be accepted as true.   *Alfonso*, 143 F.3d at 776–77 (reversing dismissal of an indictment when the district court "looked beyond the face of the indictment and drew inferences as to the proof that would be introduced by the government at trial" to satisfy an element of the charge); *accord Costello v. United States*, 350 U.S. 359, 363 (1956) (If "valid on its face," a grand jury indictment "is enough to call for trial of the charge on the merits." (internal citations omitted)).

Defendant Calabrese contends that Count One fails to allege a conspiracy to defraud a federally-insured bank because the initial November 2005 mortgage on 27 Palmer Road was not alleged to have been taken by a federally-insured bank; only the November 2006 and July 2007 refinancings on 27 Palmer Road and 669 Goshen Road are alleged to have defrauded a federally-insured bank.

A conspiracy to commit bank fraud under 18 U.S.C. § 1349 requires that "a federally insured or chartered bank must be the actual or intended victim of the scheme." *United States v. Stavroulakis*, 952 F.2d 686, 694 (2d Cir. 1992).  As Defendant acknowledges (Def.'s Reply [Doc. # 58] at 1), a "single conspiracy may have several purposes, but if one of them . . . [is] the violation of a federal law, the conspiracy is unlawful under federal law" even if the violation of federal law is not "the primary motive behind their conspiracy."  *Anderson v. United States*, 417 U.S. 211, 225–26 (1974). Defendant maintains, however, that "the fatal flaw in the conspiracy charged in Count One is that there is no allegation that the participants agreed to undertake a federal offense" because Defendants "are alleged to have entered into their conspiracy 'before November 2006,' specifically in November 2005, long before any federally-insured bank entered the picture" and "there is no allegation that the 'agreement' made by the defendants in November 2005 included an agreement to defraud" a bank that was actually or believed by Defendants to be federally insured.  (Reply at 1–2 (quoting Indictment ¶ 9) (footnote omitted).)

Defendant selectively quotes from the Indictment, which states that "[f]rom before November 2006 *through* November 2007 . . . the defendants . . . did unlawfully, knowingly, and intentionally conspire, combine, confederate, and agree with each other

knowingly and willfully to execute and attempt to execute a scheme and artifice to defraud a federally insured bank and to obtain the proceeds of loan funds issued by that bank." (Indictment ¶ 9 (emphasis added).)  Therefore, contrary to Defendant's assertion, the Indictment plainly does allege an agreement to defraud a federally insured bank.[1]

Defendant attempts to distinguish *Anderson* on the basis that the conspirators "agreed from the outset to commit a violation of federal law" by casting false votes for both federal and non-federal candidates in the same election.  (Def.'s Reply at 2–3 (citing 417 U.S. at 225–26).)  But Defendant cites no authority which suggests that such simultaneous agreement is a requirement for a valid federal conspiracy.  Rather "[c]onspiracy is generally a continuing crime" and "[c]hanges in membership, differences in time periods, and/or shifting emphases in the location of operations do not necessarily require a finding of more than one conspiracy."  *United States v. Eppolito*, 543 F.3d 25, 48 (2d Cir. 2008) (internal quotation marks omitted).

Whether the Government can prove that Defendants were part of a single conspiracy that included both federal and non-federal aims or, as Defendant Calabrese contends, "a conspiracy to defraud a non-federally insured bank into making a loan and a later conspiracy to defraud a federally insured bank into making a refinancing" (Def.'s

---

[1] Citing *United States v. Feola*, 420 U.S. 671, 696 (1975) where the Supreme Court upheld a conviction for assaulting a federal officer even though the defendants were not aware that their intended victim was an undercover federal narcotics agent, Defendant contends that the Indictment must allege either that Defendants intended to defraud a federally insured bank or a bank that they believed (even if erroneously) was a federally insured bank.  (Def.'s Mem. Supp. at 7.)  Because the Indictment alleges that a bank that was actually federally insured was the intended victim, the Government does not appear to rely on the alternate basis of federal jurisdiction outlined in *Feola*.

Mem. Supp. [Doc. # 54] at 9) is a question that must be decided by the jury on the basis of the trial evidence. *United States v. Aracri*, 968 F.2d 1512, 1519 (2d Cir. 1992) ("Whether the government has proved a single conspiracy or has instead proved 'multiple other independent conspiracies is a question of fact for a properly instructed jury.'" (quoting *United States v. Alessi,* 638 F.2d 466, 472 (2d Cir. 1980))); *see also United States v. Restrepo*, 547 F. App'x 34, 40 (2d Cir. 2013) ("A multiple conspiracies charge . . . . is designed to assist the jury in determining whether a defendant's conduct was part of the single, comprehensive conspiracy charged by reminding jurors to separately consider each charged conspiracy and each defendant's conduct.").[2]  It is sufficient at this point that the Indictment alleges such a single conspiracy.[3]

### B.      Misjoinder

Defendant Calabrese seeks severance of offenses and defendants under Rules 8 and 14 of the Federal Rules of Criminal Procedure, contending that (1) Count One was improperly joined with the conspiracies charged in the remaining counts and (2)

---

[2] While Defendant contends that this lack of clarity on when the agreement to violate federal law was reached renders the Indictment fatally defective for failing to provide adequate notice, the Indictment alleges with particularity that three separate schemes to defraud commenced in November 2005, November 2006, and July 2007 and the jury can be instructed that it must determine that a federal conspiracy was proven. *See United States v. Croft*, 124 F.3d 1109, 1115 (9th Cir. 1997) (affirming a conspiracy conviction with both federal and non-federal objectives where the jury was instructed that a conviction required it to find that a federal objective was proven).

[3] Because the Court held a telephonic colloquy with counsel on the record on March 16, 2015, it does not believe that oral argument is necessary for this motion and therefore Defendant's Request [Doc. # 64] for Oral Argument is denied.  *See* D. Conn. Loc. Civ. R. 7(a) ("Notwithstanding that a request for oral argument has been made, the Judge may, in his or her discretion, deny such request.").

severance is necessary to avoid the unfair prejudice that would result from evidence that is inadmissible against him but would be admissible as to other Defendants in a joint trial.

"For reasons of economy, convenience and avoidance of delay, there is a preference in the federal system for providing defendants who are indicted together with joint trials." *United States v. Feyrer,* 333 F.3d 110, 114 (2d Cir. 2003). However, "[u]nless the standards set out in Rule 8(b) are met, a motion for severance should be granted even absent a showing of prejudice." *Id.* at 113. Rule 8 of the Federal Rules of Criminal Procedure provides:

> (a) Joinder of Offenses. The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged . . . are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.

> (b) Joinder of Defendants. The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.

"Unlike Rule 8(a), Rule 8(b) does not permit joinder of defendants solely on the ground that the offenses charged are of 'the same or similar character.' Thus, though both subdivisions of Rule 8 focus on the nature of the acts constituting the alleged offenses, 8(b) provides a more restrictive test when multiple defendants are involved." *United States v. Turoff,* 853 F.2d 1037, 1042–43 (2d Cir. 1988). However, "when a defendant in a multiple-defendant case challenges joinder of offenses, his motion is made under [Rule] 8(b) rather than 8(a)." *Id.* at 1043.

Under Rule 8(b) joinder is proper where two or more persons' criminal acts are (1) "unified by some substantial identity of facts or participants," or (2) "arise out of a common plan or scheme." *United States v. Rittweger*, 524 F.3d 171, 177 (2d Cir. 2008) (quoting *United States v. Cervone,* 907 F.2d 332, 341 (2d Cir. 1990)).  To determine if there is a "substantial identity of facts or participants," the Second Circuit has looked to whether "a reasonable person would easily recognize the common factual elements that permit joinder." *Turoff,* 853 F.2d at 1044.  For example, joinder is proper where if there were two separate trials, "the evidence at one trial would essentially duplicate the evidence at the other," *Feyrer,* 333 F.3d at 114, or where "proof of one scheme is indispensable for a full understanding of the other," *Turoff,* 853 F.2d at 1044.  Conversely, joinder is improper where "[c]ommission of one of the offenses neither depended upon nor necessarily led to the commission of the other" and "proof of the one act neither constituted nor depended upon proof of the other." *United States v. Halper,* 590 F.2d 422, 429 (2d Cir. 1978).

A "common plan or scheme" generally exists where there is "a non-frivolous conspiracy charge." *United States v. Nerlinger,* 862 F.2d 967, 973 (2d Cir. 1988). However, where, as here, there are multiple counts of conspiracy charged (Counts One through Four and Seven) whether joinder "is warranted must be determined on a case-by-case basis." *Rittweger,* 524 F.3d at 178.  For example, joinder is proper where "one scheme stemmed from the other" such that one scheme is "part and parcel" of the other. *Turoff,* 853 F.2d at 1044. This is so because "there is a key link between the two offenses . . . and that link provides a sound basis for joinder under Rule 8(b)." *Id.*  Knowledge of the other conspiracy is at least one "indicator of whether or not there is a common scheme or

purpose." *United States v. Ohle,* 678 F. Supp. 2d 215, 225 (S.D.N.Y. 2010).  As the Second Circuit has noted, "choosing the definitional frame of reference dictates whether joinder is proper in a given case."  *Turoff,* 853 F.2d at 1039.

Defendant contends that joinder of Count One with the remaining counts is improper because the Indictment "presents wholly disparate and distinct conspiracies, each of which allegedly employed dissimilar techniques to achieve entirely separate goals across several years through various participants, several of whom are never alleged to have even met." (Def.'s Mem. Supp. at 19.)  The Government maintains that joinder is proper because the Indictment alleges "three very similar financial fraud conspiracies, all charged under 18 U.S.C. § 1349, all predicated upon a straw transfer of one of Ryan Geddes's real property holdings, and all substantially completed by the procuring through false pretenses (specifically, false loan or insurance applications), either a mortgage loan or a home insurance policy; and all the fraudulent loans and policies had the same purpose, namely, showering Geddes and his co-conspirators with large amounts of cash to which they otherwise would not be entitled." (Gov't's Opp'n [Doc. # 57] at 18.)  It contends that the primary purpose of the conspiracies charged in Counts Two and Four was to conceal one or more of the underlying fraud conspiracies. (*Id.*)

However, unlike joinder of offenses under Rule 8(a), Rule(b) does not permit joinder solely on the basis that the charged offenses of "the same or similar character." *Turoff,* 853 F.2d at 1042–43.  While the Indictment alleges the five charged conspiracies are united by the common purpose of being part of a "series of schemes intended to hide [Mr. Geddes's] assets from creditors, obtain money by false and fraudulent pretenses from others, and obstruct and impede the successful investigation of the schemes"

10

(Indictment ¶ 6), courts in this Circuit have required a greater connection to justify joinder.

For example, in *United States v. Yaron*, No. S2-10-CR-363 (GBD), 2011 WL 3279054, at *1 (S.D.N.Y. July 28, 2011), two hospital executives were charged in a single indictment for their roles in two separate schemes to defraud their employer by accepting kickbacks in return for awarding separate contracts, one of which was a construction contract and one of which was a heating, ventilation, and air conditioning (HVAC) contract. Although both of the conspiracies involved the same two hospital executives who each "used their positions within the New York Presbyterian Hospital system to award work contracts for personal gain," occurred during the same time period, and victimized the same hospital, the court held that the "similarities between the two conspiracies are not enough, however, to satisfy the requirements of joinder under Rule 8(b)." *Id.* at *8.

The two defendants involved in the construction conspiracy who sought severance were "not even mentioned in relation to the HVAC Conspiracy," there was no allegation that they "knew of or actively sought to involve themselves in the HVAC Conspiracy, which weighs heavily in favor of severance," and the two conspiracies "operated very differently" in how they funneled the kickbacks. *Id.* Additionally, trying the two cases separately would not require substantial duplication of the evidence presented and there was no allegation of a "key link" between the two conspiracies, i.e., that one flowed from the other. *Id.; see also United States v. Lech*, 161 F.R.D. 255, 257 (S.D.N.Y. 1995) (Sotomayor, J.) (joinder of three schemes to defraud an employer was

improper where one of the defendants "had very little, if any, knowledge of the other schemes, and did not participate in them").

The Government emphasizes Ryan Geddes's central role in the five charged conspiracies and the overlap in participants, goals and methods between them.  However, the Court must analyze joinder from the perspective of Mr. Calabrese who is only charged in Count One, and therefore the similarities between Counts Three through Six are beside the point.  *See United States v. Rajaratnam*, 753 F. Supp. 2d 299, 309 n.4 (S.D.N.Y. 2010) ("[T]he Court will follow the numerous other decisions in this Circuit that have analyzed the relationship between the offenses in which a defendant is charged with a co-defendant and the offenses with which only the co-defendant is charged.").

A reasonable person would not be able to "easily recognize" the common factual elements that would permit joinder of the distinct conspiracies charged in Counts One and Two and the rest of the Indictment.  *Turoff*, 853 F.2d at 1044.  Count One charges a conspiracy to defraud through mortgages and refinancing on 27 Palmer Road and 669 Goshen Road from 2005 through 2007 involving Calabrese, Geddes, and Provenzano.  Counts Three through Six started two years after the Count One conspiracy ended and involved a separate property, 66 Donahue Road, a different means of fraud: the title insurance scheme and bankruptcy fraud and false statements.  Count Seven started in 2011 involving a separate property in New York and had a substantially different modus operandi: insurance fraud through arson.

Nor can the conspiracy charged in Count One be said to have arisen from a "common plan or scheme" that links it with the other conspiracies charged in Counts Three through Seven.  *Turoff*, 853 F.2d at 1044.  While all of the charged conspiracies are

12

alleged to have centered around Geddes and his attempt to deal with his substantial business debt by hiding assets and obtaining money through fraud (Indictment ¶ 6), there is no allegation that Calabrese was aware of or participated in the other two charged conspiracies involving Geddes.   While such knowledge is not required to join the offenses, it is an important consideration that militates against joinder of Count One with the other charged conspiracies.  *See Ohle*, 678 F. Supp. 2d at 225 ("Knowledge of the other conspiracy is not required, but it is an indicator of whether or not there is a common scheme or purpose."); *United States v. Kouzmine*, 921 F. Supp. 1131, 1133 (S.D.N.Y. 1996) (Courts in this "in this circuit have concluded that the joinder of distinct conspiracies . . . is improper . . . . notwithstanding the presence of a common defendant and similar objects, because there was no suggestion that the moving defendant knew of or participated in the schemes other than the one with which he was charged.").

Geddes's central involvement in the five charged conspiracies stands apart from *Rittweger*, relied upon by the Government, in which the two charged conspiracies both involved a common plan or scheme, because both centered around efforts to induce investments into the same Ponzi scheme.  524 F.3d at 175.  Likewise, in *United States v. Attanasio*, 870 F.2d 809, 815 (2d Cir. 1989), joinder of two distinct conspiracies was held to have been proper, because both "were a part of a series of acts that shared a common purpose: to conceal and launder" a defendant's income derived from a single source of gambling and loansharking.

While all of the charged conspiracies here involved an attempt by Geddes to enrich himself and conceal his business debts, this "amounts to little more than that [all the] defendants separately conspired to commit the same offense," *Rajaratnam*, 753 F.

13

Supp. 2d at 311, and unlike *Attanasio* does not revolve around a specific stream of income or debt.  *See also Yaron*, 2001 WL 3279054 at *8 (allegation that in two conspiracies hospital executives used their positions "to award contracts for person gain" was insufficient to justify joinder).

Counts One and Two, however, were properly joined with each other.  Unlike Counts Three through Seven, the relationship between Counts One and Two is clear and logical:  Count Two involved a conspiracy to obstruct the investigation of the fraud allegations underlying Count One by creating a backdated promissory note.  While Calabrese is not alleged to have been involved in or aware of the Count Two conspiracy and it occurred in 2010, well after the conclusion of the Count One conspiracy, there is clearly a "key link between the . . .  offenses" in that "one scheme stemmed from the other," making joinder proper.  *Turoff*, 853 F.2d at 1044.

Therefore, the Court concludes that Counts One and Two were misjoined with Counts Three through Seven, but that Counts One and Two were properly joined with each other and that Geddes and Calabrese were properly joined in these two counts as defendants.

### C.    Severance

Even if Counts One and Two were properly joined with each other, "Rule 14 recognizes that joinder, even when proper under Rule 8(b), may prejudice either a defendant or the Government" and otherwise justify severance.  *Zafiro v. United States*,

14

506 U.S. 534, 538 (1993).[4]  Severance under Rule 14 is warranted "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.  Such a risk might occur when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant."  *Id.* at 539.  Severance may be justified where "evidence of a codefendant's wrongdoing in some circumstances erroneously could lead a jury to conclude that a defendant was guilty" and this risk is heightened when the multiple defendants with "markedly different degrees of culpability" are tried together in a complex case.  *Id.* Prejudice may also result where there is evidence "that is probative of a defendant's guilt but technically admissible only against a codefendant."  *Id.*

Despite the risk of prejudice from joint trials, "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice."  *Id.*  Because of the "preference, in the federal system, for the joint trial of defendants indicted together . . . a district court order denying a Rule 14 motion is considered virtually unreviewable and will be overturned only if a defendant can show prejudice so severe that his conviction constituted a miscarriage of justice and that the denial of his motion constituted an abuse of discretion."  *United States v. Yousef*, 327 F.3d 56, 149–50 (2d Cir. 2003) (internal quotation marks and citations omitted)).

---

[4] There is a temporal distinction between the misjoinder and severance analysis. While misjoinder is determined solely on the basis of what is alleged in the indictment, "[t]he Supreme Court has instructed that 'the trial judge has a continuing duty at all stages of the trial to grant a severance if prejudice does appear.'"  *Rittweger*, 524 F.3d at 179 (quoting *Schaffer v. United States*, 362 U.S. 511, 516 (1960)).

Because the Court has already concluded under Rule 8 that Counts One and Two were misjoined with Counts Three through Seven, it need only analyze under Rule 14 whether severance of counts and/or defendants is warranted for Counts One and Two. Calabrese's primary argument in support of Rule 14 severance is that he would be unfairly prejudiced by the introduction of otherwise inadmissible recorded conversations from May 2010 that discuss and implicate Calabrese for his role in preparing the allegedly fraudulent loan applications charged in Count One. (Def.'s Mem. Supp. at 30.)  In the recorded statements that have been summarized for the Court, Polverari, Provenzano, and Geddes indicate that Mr. Calabrese knowingly inflated Provenzano's income on the loan applications.  (*See* App'x to Def.'s Mem. Supp. [Doc. # 56].)[5]

To the extent that Defendant is correct that the "government presumably will offer these recordings . . . as statements in the course of and in furtherance of one or more of the subsequent conspiracies" that occurred after the Count One conspiracy ended (Def.'s Mem. Supp. at 30), this problem is largely obviated by the severance of Counts Three through Seven from Count One.[6]  Defendant does not dispute that coconspirator statements could be admitted against him under Fed. R. Evid. 801(d)(2)(E) for the Count

---

[5] Defendant moved [Doc. # 55] to file this appendix under seal "in order to ensure his compliance with the conditions that the government has placed upon these materials." During the March 16, 2015 telephonic conference on the record, the Government indicated that it did not oppose unsealing the appendix.  Accordingly, Defendant's Motion to Seal is denied as moot.

[6] The Government does not specify the counts for which these recordings will be offered but it appears that they could be offered to show consciousness of guilt as to Geddes and Calabrese in Count One and could be relevant motive evidence for Count Two, because the recordings are from May 2010 when the Count Two conspiracy started and the recordings discuss the IRS investigation that was allegedly obstructed.

One conspiracy.  (*See* Def.'s Mem. Supp. at 30–31.)  Although Defendant is not charged in the Count Two conspiracy, whether a conspiracy exists such that coconspirator statements may be admitted does not depend on whether a conspiracy has been specifically charged in an indictment so long as the government proves by a preponderance of the evidence that the defendant and declarant were both members of this uncharged conspiracy.  *See United States v. Gigante*, 166 F.3d 75, 82 (2d Cir. 1999) ("The conspiracy between the declarant and the defendant need not be identical to any conspiracy that is specifically charged in the indictment.").

As discussed above, given the differing aims, participants, time frame, and methods of operation, the Court does not agree with the Government's contention that Counts One and Two were part of an "overarching conspiracy" that includes Counts Three through Seven.  (Gov't Opp'n at 26–27.)  Nevertheless, for purposes of Rule 801(d)(2)(E), statements made in furtherance of the Count Two conspiracy would likely be admissible against Defendant Calabrese because Count Two was an attempt to conceal part of the activity forming the basis for Count One.  *See United States v. Johnson*, 200 F.3d 529, 533 (7th Cir. 2000) ("Statements made in furtherance of a conspiracy . . . . include comments designed . . . to control damage to or detection of the conspiracy, to hide the criminal objectives of the conspiracy, or to instill confidence and prevent the desertion of other members.").  This holds true even though the obstruction in Count Two occurred several years after the conclusion of the Count One conspiracy and did not involve Calabrese.  *United States v. Eppolito*, 543 F.3d 25, 47 (2d Cir. 2008) ("Indeed, in order for a single conspiracy to be found, it is not necessary that the conspirators even know the identities of all the other conspirators.").  Therefore, even in a separate trial of

Calabrese on Count One, at least some of the recorded statements could be admissible against him to show his consciousness of guilt as to Count One[7] and thus these statements (or at least some of them) are not "spillover evidence." *See United States v. Salameh*, 152 F.3d 88, 115 (2d Cir. 1998) ("A defendant's claim that he was prejudiced by the admission of evidence at a joint conspiracy trial is insupportable when the evidence would have been admissible against him in a separate trial alone as a member of the conspiracy.").

Defendant Calabrese next contends that evidence of the Count Two obstruction conspiracy would cause unfair prejudice to him because a "jury that hears about the subsequent attempts by Geddes and Provenzano to backdate a document to justify the failure to make a down payment in the 2005 transaction will naturally (albeit unfairly) consider that evidence against Mr. Calabrese, too—especially in light of the extensive coconspirator hearsay discussed above, which repeatedly stresses Mr. Calabrese's culpability regarding the loan." (Def.'s Mem. Supp. at 32.)  However, the risk of unfair prejudice to Calabrese that might result from evidence of the backdating scheme could likely be cured with a limiting instruction to the jury.  *See Rittweger*, 524 F.3d at 179 ("[T]he district court gave limiting instructions throughout the trial explaining when evidence could not be considered against a particular defendant, and the jury charge carefully explained that the jurors must consider the case against each defendant separately.").

---

[7] For example, in a May 5, 2010 conversation, Provenzano discusses statements made to him by Calabrese regarding his role in processing the false mortgage application. (Def.'s App'x. at 1.)

Therefore, Counts One and Two will not be severed from each other and both defendants charged in these counts will be tried together.[8]

**D.      Bill of Particulars**

Defendant Calabrese acknowledges that the Government's opposition to Defendant's Motion for a Bill of Particulars "provided . . . a response to each of the defendant's requests" but asks that "in the interest of fairness and a clear record, the government . . . be directed to file a bill of particulars containing the information provided in its brief." (Reply at 4 (citing Gov't's Opp'n at 12–15).)  During a March 16, 2015 telephonic status conference with counsel on the record, the Government indicated that it was willing to put this information into a bill of particulars to satisfy Defendant's request.  Therefore, Defendant's Motion for a Bill of Particulars is granted on consent and the Government shall file a bill of particulars with the information outlined in its brief.

---

[8] While this ruling will require Ryan Geddes to undergo two separate trials—one for Counts One and Two and another for Counts Three through Seven—he  has not filed an objection to Defendant's motion and did not express opposition during a March 16, 2015 telephonic conference call with counsel on the record in which this motion was discussed.

**III.     Conclusion**

For the reasons set forth above, Defendant Jason Calabrese's Motions to Dismiss [Doc. # 51], to Seal [Doc. # 55], and for Oral Argument [Doc. # 64] are DENIED; his Motion for a Bill of Particulars [Doc. # 52] is GRANTED, and his Motion for Severance [Doc. # 53] is GRANTED in part.


IT IS SO ORDERED.

_____/s/_____
Janet Bond Arterton, U.S.D.J.


Dated at New Haven, Connecticut this 6th day of April, 2015.