UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| UNITED STATES OF AMERICA | : | Crim. No. 3:14CR228(JBA) |
|---|---|---|
| | : | |
| v. | : | |
| | : | |
| JASON CALABRESE | : | August 28, 2015 |

GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America ("United States") respectfully submits this memorandum in aid of sentencing, which is presently scheduled for Tuesday, September 8, 2015, at 10:00 a.m. In sum, as explained below, the United States requests that the Court impose a fair, just, and reasonable sentence, which in the government's view would include: (1) a custodial component; and (2) a restitution order subject to defendant's ability to pay, for the actual losses on the Count One bank fraud, presently estimated at about $710,585.84, but which for reasons explained below, may warrant future adjustment downward.

I. **The Offense Conduct and Charges**

The Government agrees with and adopts the description of the offense conduct as set forth in the PSR at pp. 4-6, ¶¶7-12 and p. 6, ¶14. The government very recently received supplemental loss information from Wells Fargo, which acquired the two mortgage loans in question; this information partially supersedes the loss information reported at pp. 5-6, ¶13 and p. 6, ¶15. This updated loss information affects, respectively, the sentencing guidelines loss calculation and the restitution loss calculation, as described below.

For purposes of the sentencing guidelines, the loss calculation with respect to a fraudulently obtained mortgage ordinarily is the loan principal less any credits from the

foreclosure sale of the property.  United States v. Morris, 744 F.3d 1373, 1375 (9th Cir. 2014); United States v. Turk, 626 F.3d 743, 749-750 (2d Cir. 2010).  In this case, the present, net loss figure is $446,000; but this figure may warrant some reduction owing to an anticipated re-sale of the 27 Palmer Road property by Wells Fargo, the last holder of the 2006 Provenzano mortgage. To explain, the 2006 Provenzano mortgage for the 27 Palmer Road property had a principal amount of $936,000, and the property was purchased at foreclosure by Wells Fargo for $490,000, leaving a net loss of $446,000.  However, Wells Fargo is now preparing the property for re-sale, and if the re-sale price is sufficiently high, it may exceed both the former $490,000 purchase price plus the cost of preparing the property for resale, in which case the $446,000 net loss figure would warrant reduction.  As for the 2007 Provenzano loan on 669 Goshen Road, Wells Fargo also holds that loan, and it just recently reported that the loan is no longer in default.  Thus the 669 Goshen Road loan presently has no cognizable loss for purposes of the sentencing guidelines.[1]

Alternatively, for purposes of restitution, the loss calculation with respect to a fraudulently obtained mortgage ordinarily is the unpaid principal plus interest on the loan, less any credits from the foreclosure sale of the property.  United States v. Jimenez, 513 F.3d 62, 86-87 (3d Cir. 2008); United States v. Morgan, 376 F.3d 1002, 1009-10, 1014 (9th Cir. 2004).  In this case, the present, total net restitution loss is $710,585.84, but this figure also may warrant reduction following an anticipated re-sale of the 27 Palmer Road property.  The latter figure derives from the total, outstanding principal on the 2006 Provenzano loan, which was $985,961.15, plus the total

---

[1] The government had previously received an estimated loss figure from Wells Fargo for the 669 Goshen Road property, which consisted of estimates for an *anticipated* foreclosure sale. The government misread that information as a report of a *completed* foreclosure sale, which undersigned counsel erroneously conveyed to the Probation Officer in its comments on the Presentence Report.  The government regrets the misunderstanding and the resulting inconvenience to counsel and the Court.

outstanding interest, which was $214,624.69, for a total of $1,200,585.84, less the $490,000 foreclosure sale price, leaving a total, net loss of $710,585.84. However, because Wells Fargo is preparing the property for resale, it is conceivable that a higher resale figure might reduce the net loss amount. Regarding the 2007 Provenzano loan for 669 Goshen Road, as noted above, that loan is not presently in default, and hence there presently is no cognizable restitution loss figure for that loan.

II.     **The Sentencing Guidelines Range**

    A. Under the Governing Sentencing Guidelines

The government agrees with the PSR's assessment of a base offense level of seven, the addition of two levels for use of a special skill under section 3B1.3, see United States v. Grant, 479 F. App'x 904, 906 (11th Cir. 2012); United States v. Longwell, 410 F. App'x 684, 691-92 (4th Cir. 2011), and the subtraction of three levels for acceptance of responsibility. With respect to the loss range, the government has noted above that the present sentencing guidelines loss figure is $446,000, which lands in the loss range of from $400,000 to less than $1,000,000, for an upward adjustment of 14 levels. However, as also noted above, Wells Fargo's anticipated re-sale of the 27 Palmer Road property raises the possibility that Wells Fargo may recoup some more of the presently-estimated $446,000 loss. Considering that possibility, together with the November 1, 2015, effective date of the inflation-adjusted sentencing guidelines loss ranges – under which the applicable range would be $250,000 to under $550,000, for an enhancement of 12 levels – the government would not oppose the Court's finding that 12 levels is the appropriate loss adjustment in this case.

With respect to the two-level downward adjustment for minimal role, the government defers to the Court in determining whether is applies, noting that there are arguments both for and against its applicability. Namely, if the primary criterion is the defendant's relative reward from and financial stake in the crime, then the defendant may be found to have played a minor role, insofar as his – or possibly more accurately, his company's – commissions from the two, federally chargeable mortgages in question were $18,720 and $6,980, for a total of $25,700; adding in the $32,312 commission on the 2005 mortgage as relevant conduct yields a total stake of $58,012. By contrast, the lead defendant, Ryan Geddes, had his prior mortgage and multiple liens paid off, over and above which he received a payout from the closing of $536,000; and the borrower Provenzano was paid $106,500 out of those proceeds by Geddes just days after the 2005 mortgage closing. On the other hand, if the relevant criteria are, how essential the defendant's actions were to the completion of the crime, and the degree of cognizance by the defendant in the conduct of the crime, then the facts would appear to weigh against a minor role adjustment: defendant Calabrese was essential to preparing and submitting the fraudulent paperwork without which the fraudulent loans would not have issued, and his "special skill" and experience rendered him plainly cognizant of what he was doing.

These calculations yield a total offense level of either 18 (without a minor role adjustment) or 16 (with a minor role adjustment). The Criminal History Category is I. Accordingly, if there is no minor role adjustment and the offense level is 18, then the resulting advisory sentence range is 27-33 months (sentencing table), a fine range of $6,000 to $60,000, U.S.S.G. § 5E1.2(c)(3), and a supervised release term of two to five years. U.S.S.G. § 5D1.2.

Alternatively, if there is a minor role adjustment and the offense level is 16, then the resulting advisory sentence range is 21 to 27 months (sentencing table), a fine range of $5,000 to $50,000, U.S.S.G. § 5E1.2(c)(3), and a supervised release term of two to five years. U.S.S.G. § 5D1.2.

B. <u>The ABA Guidelines Do Not Substantially Change the Analysis</u>

The defendant asks that the Court take into account the ABA Criminal Justice Section's 2014 proposed, revised guidelines for economic crimes, attached as Exhibit 12 to Defendant's Sentencing Memorandum. These are in no way legally binding and do not supersede the actual United States Sentencing Guidelines. Even if they were, in this case they would not significantly change the foregoing analysis.

In the government's view, the proposed ABA guidelines would yield the following offense level calculation:

- Base offense level: +7 (the middle figure of the 6-8 proposed base range).
- Loss amount: +6 for loss greater than $100,000, but less than $1,000,000.
- Culpability: either +0 as "moderate," or +1 for between "moderate" and "high."
- Victim impact: at least +4 for "moderate" impact.

This yields an offense level of either 17 or 18, for sentencing ranges of either 24-30 months, or 27-33 months. The government fundamentally disagrees with the defense argument that the 10-level "cap" applies, as that is explicitly limited to "*non-serious* offenses" by first offenders (emphasis added). For the reasons discussed in Part III, below, the government regards the offense conduct as plenty serious.

**III.   A Fair, Just, and Reasonable Sentence Under 18 U.S.C. § 3553(a) Would Include a Custodial Component and a Restitution Order.**

Under *United States v. Booker*, 543 U.S. 220 (2005), as elaborated by *United States v. Crosby*, 397 F.3d 103, (2d Cir. 2005), the Courts are directed first to determine the applicable sentencing guidelines range, then consider whether a departure from that Guidelines range is appropriate, and finally, assess the Guidelines range "along with all of the factors listed in [Title 18] section 3553(a)" to determine the sentence to impose. *Crosby* at 112-13. "[I]n the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be reasonable in the particular circumstances." *United States v. Fernandez*, 443 F.3d 19, 27 (2d Cir. 2006).

The factors to consider under 18 U.S.C. § 3553(a) included: (1) "the nature and circumstances of the offense and history and characteristics of the defendant"; (2) the need for the sentence to serve various goals of the criminal justice system, including (a) "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment," (b) to accomplish specific and general deterrence, (c) to protect the public from the defendant, (d) "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"; (3) the kinds of sentences available; (4) the sentencing range set forth in the Guidelines; (5) policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to victims.

1. Nature and circumstances of the offense, and history and characteristics of the defendant

These factors present an unusually stark contrast between, on the one hand, the seriousness and deliberateness of the offense conduct, and on the other hand, the defendant's otherwise positive, indeed exemplary, personal history. In the government's view, the seriousness of the offense conduct warrants a custodial component to the sentence; while the defendant's very positive history apart from the offense conduct invites the Court to use its discretion to fashion a sentence that is fair, just, and reasonable under the totality of circumstances presented.

The government regards the offense conduct in this case as very serious – both on its own terms, and as part of a highly destructive, broader industry context. The fraudulent acts in the Count One bank fraud conspiracy were blatant and highly consequential. They resulted in the issuance of a nearly million dollar mortgage from a federally insured bank, to a borrower who did not remotely have the means to pay it back; and it followed directly from the initial, 2005 fraudulent mortgage application that resulted in the leading co-conspirator's paying off his several debts on the property while walking away with over $500,000 cash.

As noted, the defendant's role as a mortgage broker involved a special skill that was essential to the fraud conspiracy's success. In the government's view, with special skills go special obligations not to abuse them. The time frame of the offense and relevant conduct – 2005 through 2007 – was precisely when a nation-wide frenzy of mortgage fraud conduct was at its peak. At least with hindsight, it is clear that this conduct in the aggregate was a significant contributor to the 2007-2008 financial collapse, which caused the destruction of millions of jobs around the world – harming a great many individuals and families who had nothing to do with the fraud. The government certainly acknowledges that defendant Calabrese was a very minor player

within that broader context – but without at least thousands or more of such "minor players," the systemic mortgage fraud conduct that helped push the global economy over a precipice almost certainly could not have happened, at least not with anywhere near the same scope and scale of harms.

The defendant's criminal conduct stands in contrast to his otherwise positive, indeed exemplary, personal history. First, the defendant has no other criminal history. Second, the defendant entered a plea, saving the government and the Court the time and expense of preparing the case for trial and trying the case. Third, the defendant has pursued and maintained gainful employment throughout his adult life, and has consistently provided for his family over those years. Finally, as indicated in the letters submitted to the Court on the defendant's behalf, the defendant has an extraordinary record of serving others in the community. It is apparent from these letters that the defendant has worked with a great many young people over the years as a youth sports coach and mentor, and has had a very positive impact on several. But it is also apparent that the defendant has, time and time again, made extraordinary efforts on behalf of both family members and others in the community when the latter endured great hardships: conducting fundraisers so that the illness or death of loved ones did not bankrupt families; providing solace at the bedsides of sick friends and relatives; doing chores and paying bills for injured or ill friends and family; doing *pro bono* landscaping and other volunteer jobs for his children's school; and serving as a mentor for children whose own fathers had passed away. In the government's view, these facts are appropriately weighed in the balance when determining how much punishment is necessary and warranted in this case.

2. <u>Need for sentence to promote respect for law, specific & general deterrence, to protect the public, and provide defendant with needed training, care, and correctional treatment</u>

The government regards the primary purpose of the sentence as general deterrence, to discourage others tempted to engage in fraudulent financial activity, especially in the pervasive and costly realm of mortgage frauds. The need to deter defendant Calabrese from re-offending does not appear to be a significant factor. But for the reasons stated above, the offense conduct nonetheless warrants a term of imprisonment. Recent years' history suggests that mortgage frauds have been for some time substantially under-deterred, both locally and nationally. In the government's view, there was no compelling financial temptation other than greed for the defendant to participate in the mortgage fraud conspiracy to which he pled guilty. And he chose to conduct the frauds in this case with eyes wide open, knowing full well that the loans were at great risk of defaulting. By making this choice, the defendant joined the great many self-serving lawbreakers whose conduct, in the aggregate, helped launch what became a devastating, global financial collapse.

3 & 4. <u>The kinds of sentences available</u> / <u>The sentencing range set forth in the guidelines</u>

The defendant has been convicted of a Class A felony. <u>See</u> 18 U.S.C. §§ 3559, 3561(a)(1); U.S.S.G. § 5B1.1(b)(1). The statutory maximum sentence is 30 years. A term of probation is not authorized by the Guidelines. Community confinement is not available given the defendant's Guidelines exposure as calculated in the PSR. Accordingly, and for the reasons discussed above, a sentence that includes a term of imprisonment and a restitution order is appropriate in this case.

5. <u>Policy statements issued by the Sentencing Commission</u>

Government counsel is not aware of any policy statement by the Sentencing Commission that applies to this case.

6. <u>The need to avoid unwarranted sentencing disparities</u>

In the government's view, a sentence that includes a period of incarceration is necessary to avoid an unwarranted sentencing disparity, given the defendant's role in and contribution to a mortgage fraud involving several hundreds of thousands of dollars of loss.

7. <u>The need to provide restitution to victims</u>

Subject to the defendant's ability to pay, the government also requests a restitution order for the actual loss on the Count One bank fraud, that is, the 27 Palmer Road property that went into foreclosure. As noted above, the actual losses are presently estimated at $710,585.84, but may warrant adjustment downward in the near future.

## CONCLUSION

For all of the foregoing reasons, the government respectfully requests that the Court impose a fair, just, and reasonable sentence, which in the government's view would include: (1) a custodial component; and (2) a restitution order subject to defendant's ability to pay, for the actual losses on the Count One bank fraud, estimated at about $710,585.84, but which may warrant some adjustment downward in the near future.

    Respectfully submitted

    DEIRDRE M. DALY
    UNITED STATES ATTORNEY

    */s/ Henry K. Kopel*

    HENRY K. KOPEL
    ASSISTANT UNITED STATES ATTORNEY
    Fed. Bar No. ct24829
    157 Church Street, 25th Floor
    New Haven, CT  06510
    (203) 821-3824

**CERTIFICATE OF SERVICE**

      I hereby certify that on August 28, 2015, I filed a copy of foregoing sentencing memorandum and caused copies of same to be served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System. Copies of the foregoing also have been sent to counsel for defendant Calabrese, James T. Cowdery, Esq. and James Healey, Esq., at jcowdery@cemlaw.com and jhealy@cowderymurphy.com, and to U.S. Probation Officer Megan Chester, at megan_chester@ctp.uscourts.gov.

                        Assistant U.S. Attorney