# 15-2995

### IN THE

# United States Court of Appeals

### FOR THE SECOND CIRCUIT

UNITED STATES OF AMERICA

*Appellee,*

—vs—

JASON CALABRESE,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

## BRIEF FOR THE DEFENDANT-APPELLANT
## JASON CALABRESE

HENRY K. KOPEL, ESQ.
SANDRA SLACK GLOVER, ESQ.
UNITED STATES ATTORNEY'S OFFICE
157 CHURCH STREET, 25TH FLOOR
NEW HAVEN, CONNECTICUT 06510
(203) 821-3700

AARON J. ROMANO, ESQ.
AARON J. ROMANO, P.C.
ATTORNEY FOR JASON CALABRESE
55 WOODLAND AVENUE
BLOOMFIELD, CONNECTICUT 06002
(860) 286-9026

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES..........................................................................ii-v

STATEMENT OF JURISDICTION..............................................................1-2

STATEMENT OF THE ISSUES....................................................................2

STATEMENT OF THE CASE.......................................................................3-4

STATEMENT OF FACTS.............................................................................5-6

SUMMARY OF ARGUMENT......................................................................7

ARGUMENT.................................................................................................7-37

    1.     Jason Calabrese did not Possess a Special Skill.....................9-25

    2.     Jason Calabrese did not Utilize a Special Skill that
          Significantly  Facilitated the Commission or
          Concealment of the Offense.................................................25-33

    3.     The Use of Special Skill Enhancement is Subsumed
          within the Fraud Conviction................................................33-37

CONCLUSION..............................................................................................38

CERTIFICATE OF SERVICE......................................................................39

CERTIFICATE PER FED. R. APP. P. 32(a).................................................40

# TABLE OF AUTHORITIES

**<u>CASES</u>**                                                                 **<u>PAGES</u>**

<u>Flanagan Midland Asphalt Corp. v. U.S.</u>,
    489 U.S. 794 (1989)...........................................................................1

<u>U.S. v. Allen</u>,
    201 F.3d 163 (2d Cir. 2000)..............................................................22

<u>U.S. v. Barrett</u>,
    178 F.3d 643 (2d Cir. 1999)...........................................................33-34

<u>U.S. v. Berry</u>,
    717 F.3d 823 (10th Cir. 2013)...............................................15-16,19-20

<u>U.S. v. Broderson</u>,
    67 F.3d 452 (2d Cir. 1995)..............................................................35,37

<u>U.S. v. Connell</u>,
    960 F.2d 191 (1st Cir. 1992)..............................................................36

<u>U.S. v. Downing</u>,
    297 F.3d 52 (2d. Cir 2002)................................................................12

<u>U.S. v. Echevarria</u>,
    33 F.3d 175 (2d Cir. 1994).................................................................37

<u>U.S. v. Elefant</u>,
    999 F.2d 674 (2d Cir. 1993)...............................................................28

<u>U.S. v. Fuchs</u>,
    635 F.3d 929 (7th Cir. 2011)..............................................................23

<u>U.S. v. Gallardo</u>,
    266 F. App'x 468 (7th Cir. 2008)........................................................27

U.S. v. Garfinkel,
    29 F. 3d 1253 (8th Cir. 1994)..................................................................30

U.S. v. Garrison,
    133 F. 3d 831 (11th Cir. 1998)................................................................37

U.S. v. Godman,
    223 F. 3d 320 (6th Cir. 2000)..............................................................20-21

U.S. v. Gormley,
    201 F. 3d 290 (4th Cir. 2000)..............................................................18-19

U.S. v. Grant,
    479 F. App'x 904 (11th Cir. 2012)........................................................31-32

U.S. v. Hickman,
    991 F. 2d 1110 (3d Cir. 1993)..............................................................16,30

U.S. v. Hilgers,
    560 F. 3d 944 (9th Cir. 2009)..................................................................17

U.S. v. Hirsch,
    239 F. 3d 221 (2d Cir. 2001)..................................................................23

U.S. v. Hussey,
    254 F. 3d 428 (2d Cir. 2001)..............................................................36-37

U.S. v. Jing Bing Lang,
    362 F. 3d 1200 (9th Cir. 2004)................................................................16

U.S. v. Jolly,
    102 F. 3d 46 (2d Cir. 1996)................................................................23,35

U.S. v. Kimber,
    777 F. 3d 553 (2d Cir. 2015)....................................................................8

U.S. v. Laljie,
    184 F. 3d 190 (2d Cir. 1999)..........................................................................22

U.S. v. Lee,
    296 F. 3d 792 (9th Cir. 2002)..................................................................20, 22

U.S. v. Lee,
    324 F. Supp. 2d 165 (D. Me. 2004)...............................................................23

U.S. v. Longwell,
    410 F. App'x 684 (4th Cir. 2011).................................................................17

U.S. v. Mainard,
    5 F. 3d 404 (9th Cir. 1993)....................................................................15, 24

U.S. v. Marles,
    408 F. Supp. 2d 38 (D. Me. 2006)..........................................................23-24, 30

U.S. v. Salazar,
    489 F. 3d 555 (2d Cir. 2007)..................................................................12, 15

U.S. v. Spencer,
    4 F. 3d 115 (2d Cir. 1993)..........................................................................17

U.S. v. Thomas,
    274 F. 3d 655 (2d Cir. 2001).......................................................................33

U.S. v. Thorn,
    446 F. 3d 378 (2d Cir. 2006).......................................................................23

U.S. v. Ugwu,
    539 F. App'x 35 (3d Cir. 2013)....................................................................32

U.S. v. Way,
    465 F. App'x 391 (5th Cir. 2012)..................................................................26

U.S. v. Weinstock,
    153 F. 3d 272 (6th Cir. 1998).......................................................................30

## STATUTES AND OTHER AUTHORITIES

12 U.S.C. § 5101................................................................................................10

18 U.S.C. § 1344............................................................................................1, 34

18 U.S.C. § 1349.............................................................................................1, 3

28 U.S.C. § 1291..................................................................................................1

USSG § 3B1.3.............................................................................................passim

Conn. Gen. Stat. § 36a-485.........................................................................13-14

Conn. Gen. Stat. § 36a-486.........................................................................10-11

## STATEMENT OF JURISDICTION

The Defendant-Appellant, Mr. Jason Calabrese, appeals from the judgment of conviction and sentence imposed by the Connecticut District Court (Arterton, U.S.D.J.). The basis for the District Court's subject matter jurisdiction is that the Defendant's conviction arose from a prosecution for violations of Federal Law, 18 U.S.C. §§1344,[1] 1349,[2] initiated in the Federal District Court of Connecticut. USA v. Calabrese, Docket No. 3:14-cr-228(JBA). This Court has jurisdiction pursuant to 28 U.S.C. § 1291: "The courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the United States..." This appeal is from a final judgment. See Flanagan Midland Asphalt Corp. v. U.S., 489 U.S. 794, 798 (1989). Judgment entered against Mr. Calabrese on September 23, 2015. USA v. Calabrese,

---

[1] 18 U.S.C. § 1344, Bank Fraud: Whoever knowingly executes, or attempts to execute, a scheme or artifice--(1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises; shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

[2] 18 U.S.C. §1349, Attempt and Conspiracy: Any person who attempts or conspires to commit any offense under this chapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

Docket No. 3:14-cr-228(JBA), [Doc. #176], JA[3] 122-124. Mr. Calabrese timely filed

his Notice of Appeal on September 23, 2015. USA v. Calabrese, Docket No. 3:14-cr-

228(JBA), [Doc. #177], JA 125.

## STATEMENT OF THE ISSUES

1.      Whether the District Court erred in applying the sentencing enhancement

pursuant to USSG § 3B1.3 for use of a special skill, where Mr. Calabrese did not

possess a special skill at the time of the offense?

2.      Whether the District Court erred in applying the sentencing enhancement

pursuant to USSG § 3B1.3 for use of a special skill, where, assuming *arguendo*, Mr.

Calabrese utilized a special skill, this did not significantly facilitate the commission

or concealment of the offense?

3.      Whether the District Court erred in applying the sentencing enhancement

pursuant to USSG § 3B1.3 for use of a special skill, where, assuming *arguendo*, Mr.

Calabrese utilized a special skill which significantly facilitated the commission or

concealment of the offense, this conduct was subsumed within the base offense level

of bank fraud, 18 U.S.C. §1344?

---

[3] The designation "JA" followed by a number indicates the Joint Appendix
and its page number.

2

## STATEMENT OF THE CASE

This appeal emanates from the District Court's (Arterton, U.S.D.J) erroneous application of a two (2) level sentencing enhancement for use of a special skill, USSG §3B1.3. USA v. Calabrese, Docket No. 3:14-cr-228(JBA).

On November 20, 2014, a grand jury returned an indictment whereby the Defendant-Appellant, Jason Calabrese, was charged with Conspiracy to Commit Bank Fraud, in violation of 18 U.S.C. §1349. USA v. Calabrese, Docket No. 3:14-cr-228(JBA), [Doc. #1], JA 13.  The indictment alleged that Mr. Calabrese, along with co-defendant Ryan Geddes and Thomas Provenzano[4] conspired to obtain and refinance, by means of false loan applications, a series of three mortgage loans.

On May 5, 2015, Mr. Calabrese plead guilty to Conspiracy to Commit Bank Fraud, in violation of 18 U.S.C. §1349. USA v. Calabrese, Docket No. 3:14-cr-228(JBA), [Doc. #100], JA 34. On September 8, 2015, Mr. Calabrese was sentenced by the Court (Arterton, U.S.D.J.) to six (6) months of incarceration, two (2) years of supervised release, three (3) months of home confinement with electronic monitoring, one hundred (100) hours of community service, a one hundred dollar ($100.00) Special Assessment, a three thousand dollar ($3,000.00) fine, and restitution in the

---

[4] USA v. Provenzano, Docket No. 3:14-cr-002(JBA).

3

amount of $400,585.84, jointly and severally with his co-defendants.[5] N.T. 9/8/15 at 69-70, JA 198-199.

In determining Mr. Calabrese's sentence, the Court applied the two (2) level enhancement under USSG §3B1.3[6] for use of a special skill. The Court posited that the special skill enured by Mr. Calabrese's possession of a mortgage broker's license significantly facilitated the criminal conduct at issue. At the time of the offense, however, Mr. Calabrese was not a licensed mortgage broker, nor did he possess a special skill that significantly facilitated the criminal activity.

On September 23, 2015, Mr. Calabrese filed his Notice of Appeal, USA v. Calabrese, Docket No. 3:14-cr-228(JBA), [Doc. #177], JA 125. Mr. Calabrese now respectfully submits his brief contesting the District Court's erroneous application of the special skill enhancement.

---

[5] On September 23, 2015, Judgment entered on the same. USA v. Calabrese, Docket No. 3:14-cr-228(JBA), [Doc. #176], JA 122-124.

[6] USSG §3B1.3, Abuse of Position of Trust or Use of Special Skill: If the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels. This adjustment may not be employed if an abuse of trust or skill is included in the base offense level or specific offense characteristic. If this adjustment is based upon an abuse of a position of trust, it may be employed in addition to an adjustment under §3B1.1 (Aggravating Role); if this adjustment is based solely on the use of a special skill, it may not be employed in addition to an adjustment under §3B1.1 (Aggravating Role).

4

## STATEMENT OF FACTS

As recited in the indictment,[7] in or about November of 2005, Mr. Calabrese, Mr. Geddes, and Mr. Provenzano agreed to structure a transaction in which Mr. Provenzano would purchase a residential property owned by Mr. Geddes. To effectuate the sale, Mr. Provenzano applied for a mortgage, representing that he was a highly-paid executive at a company owned by Mr. Geddes, with an income sufficient to qualify for a large mortgage. At the time, Mr. Calabrese was a loan officer who submitted the application for processing and approval.

A closing was held on Mr. Geddes' sale of the property to Mr. Provenzano, and proceeds of the new mortgage loan paid off several liens, as well as a prior mortgage on the property. Mr. Calabrese received a fee; Mr. Geddes received a large cash pay out, which he shared with Mr. Provenzano.

The following year, in or about November 2006, Mr. Provenzano applied for a mortgage refinancing loan, again stating that he was a highly-paid executive at a company owned by Mr. Geddes, with income sufficient to qualify for the new mortgage. A federally-insured bank issued a mortgage refinancing loan to Mr. Provenzano. The proceeds of the refinancing loan were used to pay off the November 2005 mortgage loan and Mr. Calabrese received a fee.

---

[7] USA v. Calabrese, Docket No. 3:14-cr-228(JBA), [Doc. #1], JA 13.

In or about July 2007, Mr. Provenzano applied for a mortgage refinancing loan with respect to a residential property that he owned and occupied. Again, the mortgage refinancing loan application represented Mr. Provenzano as a highly-paid executive at a company owned by Mr. Geddes, with sufficient income to qualify for this mortgage. In or about July 2007, a federally-insured bank issued a mortgage refinancing loan to Mr. Provenzano for the residential property.

In reality, Mr. Provenzano was not a highly-paid executive; in 2005 and 2006, Mr. Provenzano earned less than $50,000.00 a year. A company owned and controlled by Mr. Geddes had provided verification for the false employment and income representations, resulting in the banks issuing the loans.

At the time of the fraudulent transactions, Mr. Calabrese did not possess a special skill that significantly facilitated the commission of a crime. Prior to receiving his mortgage loan originator license in 2010, Mr. Calabrese acted only as a loan officer whose duty was to submit loan applications to the banks. The banks in turn would verify the employment and income information, and approve or disapprove loan applications based on their own internal formulas, independent from any information conveyed by Mr. Calabrese. Consequently, the two (2) level enhancement was inappropriately applied.

6

## SUMMARY OF ARGUMENT

The District Court found that a special skill enhancement pursuant to USSG §3B1.3 was warranted based upon Mr. Calabrese's status as a licensed mortgage broker.  At the time of the offense, however, Mr. Calabrese was not a licensed mortgage broker, but rather a loan officer.  As a loan officer, Mr. Calabrese did not possess a special skill.  Should this Court find that Mr. Calabrese possessed a special skill at the time of the offense, no special skill was utilized to significantly facilitate the commission or concealment of the offense. In the alternative, assuming *arguendo* that Mr. Calabrese did utilize a special skill in a manner that significantly facilitated the commission or concealment of the offense, the enhancement may not be applied as the conduct is already included in the base offense level for the fraud itself.

Mr. Calabrese's case should be remanded so that he may be re-sentenced absent the application of the two level enhancement for use of a special skill, USSG § 3B1.3.

## ARGUMENT

The District Court determined that a special skill enhancement was warranted based upon Mr. Calabrese's status as a licensed mortgage broker.  The District Court framed the disputed inquiry: "Now we have the issue of an enhancement for use of special skill.  That is, *Mr. Calabrese's mortgage broker license and under 3B1.3,*

7

*whether that is applicable under the circumstances here*." (Emphasis added) N.T. 9/8/15 at 10, JA 139. The District Court's decision to apply the enhancement was equivalently premised:

> So I think that it's quite clear that *having the mortgage broker license is a special skill*...And it seems to the Court that Mr. Calabrese's role, utilizing his skills as the mortgage broker, both his license, which gives the imprimata of integrity to the application submitted, and his knowledge of– that assisted Provenzano, advised Provenzano, on what fraudulent numbers he should be submitting in order to get the loan, means that this two level enhancement under 3B1.3 is applicable. (Emphasis added) N.T. 9/8/15 at 14-15, JA 143-144.

The fallacy of the District Court's finding, however, is that, at the time of the offense, Mr. Calabrese was *not* in fact a licensed mortgage broker. Rather, Mr. Calabrese was a loan officer, and possessed no special skill that significantly facilitated the offense.

Pursuant to § 3B1.3, "If the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels." The standard of review for the application of the special skill enhancement is well established. "We review de novo the legal question of what constitutes a special skill and review for clear error a sentencing court's finding that use of a special skill significantly facilitated the commission of an offense." U.S. v. Kimber, 777 F. 3d 553, 563 (2d Cir. 2015).

8

1.   <u>**Jason Calabrese did not Possess a Special Skill**</u>

It was in Mr. Calabrese's draft Pre-Sentence Investigation Report (PSR)[8] that

the question of whether Mr. Calabrese possessed a special skill first arose.   In

computing Mr. Calabrese' offense level, the Probation Officer asserted: "The

defendant used a special skill, **specifically his position as a licensed mortgage**

**broker**, in a manner that significantly facilitated the commission of the offense;

therefore, increase by two levels. USSG §3B1.3." (Emphasis added) <u>USA v.</u>

<u>Calabrese</u>, Docket No. 3:14-cr-228(JBA), [Doc. #160 at ¶27].  The Government, in

its response to the PSR, posited: "Although the government did not consider whether

the special skill enhancement of USSG § 3B1.1 [sic] applied in this case, the pertinent

case law rather clearly states that it does." <u>USA v. Calabrese</u>, Docket No. 3:14-cr-

228(JBA), [Doc. #160-3 at 2].  Defense counsel rightfully objected to the special skill

enhancement, advising the Probation Officer that "Mr. Calabrese first received his

license on or about March 31, 2010." <u>USA v. Calabrese</u>, Docket No. 3:14-cr-

228(JBA), [Doc. #160-2 at 2].

Indeed, it would have been impossible for Mr. Calabrese possess a license at

---

[8] In accordance with the Second Circuit directive, Mr. Calabrese has
submitted the Pre-Sentence Investigation Report, the Government and Defense
Objections, and the Probation Officer's Addendum thereto, to this Court under
seal. <u>USA v. Calabrese</u>, Docket No. 3:14-cr-228(JBA), [Doc. #160]

9

the time of the offense. It was not until the passage of the S.A.F.E. Mortgage

Licensing Act of 2008, 12 U.S.C. §5101[9] that Connecticut developed a licensing

scheme for mortgage loan originators, codified as Connecticut General Statute §36a-

486 *et seq,*[10] and made effective April 1, 2010. Prior to the passage of this legislation,

---

[9] 12 U.S.C. §5101, Purposes and methods for establishing a mortgage
licensing system and registry: In order to increase uniformity, reduce regulatory
burden, enhance consumer protection, and reduce fraud, the States, through the
Conference of State Bank Supervisors and the American Association of
Residential Mortgage Regulators, are hereby encouraged to establish a Nationwide
Mortgage Licensing System and Registry for the residential mortgage industry that
accomplishes all of the following objectives: (1) Provides uniform license
applications and reporting requirements for State-licensed loan originators. (2)
Provides a comprehensive licensing and supervisory database. (3) Aggregates and
improves the flow of information to and between regulators. (4) Provides
increased accountability and tracking of loan originators. (5) Streamlines the
licensing process and reduces the regulatory burden. (6) Enhances consumer
protections and supports anti-fraud measures. (7) Provides consumers with easily
accessible information, offered at no charge, utilizing electronic media, including
the Internet, regarding the employment history of, and publicly adjudicated
disciplinary and enforcement actions against, loan originators. (8) Establishes a
means by which residential mortgage loan originators would, to the greatest extent
possible, be required to act in the best interests of the consumer. (9) Facilitates
responsible behavior in the subprime mortgage market place and provides
comprehensive training and examination requirements related to subprime
mortgage lending.(10) Facilitates the collection and disbursement of consumer
complaints on behalf of State and Federal mortgage regulators.

[10] Conn. Gen. Stat. § 36a-486, Licenses required. Exemptions. Prohibited
advertisements. Violations: (a) No person shall engage in the business of making
residential mortgage loans or act as a mortgage broker in this state unless such
person has first obtained the required license for its main office and each branch
office where such business is conducted in accordance with the provisions of
sections 36a-485 to 36a-498f, inclusive, 36a-534a and 36a-534b. Effective April

10

there was simply no mechanism by which mortgage loan originators could be licensed.

Despite this, in the Addendum to the Presentence Report, the Probation Officer maintains: "...records indicate Mr. Calabrese was licensed as a mortgage loan originator at the time of the offense; however, the probation officer cannot address what training was required to obtain or renew such a license at that time." USA v. Calabrese, Docket No. 3:14-cr-228(JBA), [Doc. #160-4 at 3]. See also USA v. Calabrese, Docket No. 3:14-cr-228(JBA), [Doc. #160 at ¶59]: "As verified via a review of the online National Mortgage Licensing System, Jason Calbarese was issued Mortgage Loan Originator License Number LO-126293 effective October 1, 2002." Unfortunately, the Probation Officer misinterpreted the records obtained

---

1, 2010, any such person who is an individual shall also obtain a mortgage loan originator license prior to conducting such business unless such individual does not engage directly in the activities of a mortgage loan originator. A person, other than a licensed mortgage loan originator acting on behalf of a mortgage lender or mortgage correspondent lender, shall be deemed to be engaged in the business of making residential mortgage loans if such person advertises, causes to be advertised, solicits or offers to make residential mortgage loans, either directly or indirectly. A person, other than a licensed mortgage loan originator acting on behalf of a mortgage broker, shall be deemed to be acting as a mortgage broker if such person advertises or causes to be advertised that such person will negotiate, solicit, place or find a residential mortgage loan, either directly or indirectly. A mortgage correspondent lender shall not be deemed to be acting as a mortgage lender if such mortgage correspondent lender makes a loan utilizing its own funds in a situation where another person does not honor such person's commitment to fund the loan.

through the National Mortgage Licensing System. Effective October 2002, Mr. Calabrese was *registered* as a *loan officer*; he did not become a licensed mortgage loan originator until 2010. USA v. Calabrese, Docket No. 3:14-cr-228(JBA), [Doc. #175-2 at 2,4], JA 95,97.

"In general, for § 3B1.3 to apply, the government must establish: (1) that the defendant possessed a special skill or occupied a position of trust, and (2) that he or she used this skill or position 'in a manner to significantly facilitate' the offense of conviction." U.S. v. Downing, 297 F.3d 52, 64 (2d Cir. 2002). In the case *sub judice*, the Government would have to establish, by a preponderance of the evidence, that Mr. Calabrese possessed a special skill and that he used that skill in a manner to significantly facilitate the bank fraud. U.S. v. Salazar, 489 F. 3d 555 (2d Cir. 2007).

Notably, the Government did not argue, nor did the Court find, that Mr. Calabrese possessed a special skill beyond the alleged licensure. See Government's Sentencing Memorandum: "The government agrees with the PSR's assessment of a base offense level of seven, the addition of two levels for use of a special skill under 3B1.3."[11] USA v. Calabrese, Docket No. 3:14-cr-228(JBA), [Doc. #164 at 3], JA 77.

---

[11] Instead, the Government equates the conclusory assertion that Mr. Calabrese was a licensed mortgage broker with the possession of a special skill. See Government's Sentencing Memorandum: "...defendant Calabrese was essential to preparing and submitting the fraudulent paperwork without which the fraudulent loans would not have issued, and his 'special skill' and experience

The PSR having delineated the basis for the special skill enhancement **"specifically"**[12] as Mr. Calabrese's mortgage loan originator license.   Other than the Probation Officer's mistaken belief concerning Mr. Calabrese's license, there was no enumeration regarding whether Mr. Calabrese possessed a special skill necessary to satisfy USSG §3B1.3.   To the contrary, as the Probation Officer advised the Court in the addendum to the PSR: "...the probation officer cannot address what training was required to obtain or renew such a license at that time [October 2002]." USA v. Calabrese, Docket No. 3:14-cr-228(JBA), [Doc. #160-4 at 3].

As articulated above, the District Court enhanced Mr. Calabrese's sentence by two levels based upon the erroneous presumption that Mr. Calabrese was a licensed mortgage broker at the time of the offense[13]:

---

rendered him plainly cognizant of what he was doing." USA v. Calabrese, Docket No. 3:14-cr-228(JBA), [Doc. #164 at 4], JA 78. "As noted, the defendant's role as a mortgage broker involved a special skill that was essential to the fraud conspiracy's success.  In the government's view, with special skills go special obligations not to abuse them." USA v. Calabrese, Docket No. 3:14-cr-228(JBA), [Doc. #164 at 7], JA 81.

[12] Emphasis added.

[13] Further, the term "mortgage broker" is a misnomer.  Connecticut General Statute §36a-485 clearly delineates a "mortgage broker" from a "mortgage loan originator." Conn. Gen. Stat. §36a-485(15): "Mortgage broker" (A) means a person who (i) for compensation or gain or with the expectation of compensation or gain (I) takes a residential mortgage loan application, or (II) offers or negotiates terms of a residential mortgage loan, and (ii) is not the prospective source of the funds for the residential mortgage loan, and (B) does not include (i) an individual

13

So I think that it's quite clear that having the mortgage broker license is a special skill...And it seems to the Court that Mr. Calabrese's role, utilizing his skills as the mortgage broker, both his license, which gives the imprimata of integrity to the application submitted, and his knowledge of– that assisted Provenzano, advised Provenzano, on what fraudulent numbers he should be submitting in order to get the loan, means that this two level enhancement under 3B1.3 is applicable. N.T. 9/8/15 at 14-15, JA 143-144.

---

who is licensed as a mortgage loan originator acting as a mortgage loan originator on behalf of such mortgage loan originator's sponsoring mortgage lender, mortgage correspondent lender, mortgage broker or exempt registrant, or (ii) an individual exempt from mortgage loan originator licensure under subdivision (2) of subsection (b) of section 36a-486 when acting within the scope of such exemption; Conn. Gen. Stat. §36a-485(18): "Mortgage loan originator" means an individual who for compensation or gain or with the expectation of compensation or gain, either for such individual or for the person employing or retaining such individual, (A) takes a residential mortgage loan application, or (B) offers or negotiates terms of a residential mortgage loan. "Mortgage loan originator" does not include (i) an individual engaged solely as a loan processor or underwriter; (ii) a person who only performs real estate brokerage activities and is licensed in accordance with chapter 392,1 unless the person is compensated by a mortgage lender, mortgage correspondent lender, mortgage broker or other mortgage loan originator or by any agent of such mortgage lender, mortgage correspondent lender, mortgage broker or other mortgage loan originator; (iii) a person solely involved in extensions of credit relating to timeshare plans, as that term is defined in Paragraph 53D of 11 USC 101; or (iv) any individual who solely renegotiates terms for existing mortgage loans on behalf of a mortgagee and who does not otherwise act as a mortgage loan originator, unless the United States Department of Housing and Urban Development, the Bureau of Consumer Financial Protection or a court of competent jurisdiction determines that the S.A.F.E. Mortgage Licensing Act of 2008, 12 USC Section 5101 et seq., requires such individual to be licensed as a mortgage loan originator under state laws implementing said S.A.F.E. Mortgage Licensing Act;" Mr. Calabrese obtained a license as a mortgage loan originator. USA v. Calabrese, Docket No. 3:14-cr-228(JBA), [Doc. #175-2 at 4], JA 97.

Excising the existence of the license, there was no basis on which the Court did conclude, or could conclude, that the enhancement applied.

The Second Circuit Court of Appeals has previously explained:

> ... we required use of a preponderance of the evidence standard [for the application of a sentence enhancement] because it properly balanced the defendant's due process rights with the long history of judicial discretion in sentencing, the strong interest in judicial economy, and the fact that already over-burdened trial courts would be greatly disserved by the time-consuming hearings that would be constantly called for under any higher standard. (Internal citations and quotations omitted) U.S. v. Salazar, 489 F. 3d 555, 557 (2d Cir. 2007).

Here, not only has the Government failed to satisfy its burden of proof by a preponderance of the evidence, it has presented *no* evidence that the enhancement should apply to Mr. Calabrese. This is apparent in the United States of America's Opposition to Defendant's Motion to Reduce Sentence. The Government argues that District Court correctly applied the special skill enhancement, citing case law which affirms that "education, training, and licensing are *not always* necessary to find that a defendant utilized a special skill to carry out a crime." (Emphasis in the original) USA v. Calabrese, Docket No. 3:14-cr-228(JBA), [Doc. #182 at 4], JA 119. This supposition is immaterial however, as the Government presented no evidence that *Mr. Calabrese*, lack of licensure acknowledged, "utilized a special skill to carry out a crime." See e.g. U.S. v. Mainard, 5 F. 3d 404, 407 (9th Cir. 1993): "The issue before us is not whether the special skill enhancement can apply to a drug manufacturer; it

15

is whether, under the circumstances, it should apply." U.S. v. Berry, 717 F. 3d 823, 839 (10th Cir. 2013)(Holmes, C.J., concurring): "Truck drivers do not categorically possess a special skill; some truck-driving skills will satisfy both parts of the test, while others will not. Here, the district court's task was to determine whether Mr. Berry's truck-driving skills were sufficient to be deemed special." U.S. v. Hickman, 991 F. 2d 1110, 1112-1113 (3d Cir. 1993):

> We do not rule out the possibility that the skills of a general contractor may, in some cases, be sufficient for application of this section. The record in the instant case, however, does not justify its application here. Moreover, while Hickman was licensed as a contractor by the Virgin Islands, the government has offered no evidence as to what skill requirements, if any, must be met to obtain such a license. Indeed, the license to which the parties refer, as best we can tell, is merely the general business license required of a wide range of commercial enterprises in the Virgin Islands.

U.S. v. Jing Bing Lang, 362 F. 3d 1200, 1203 (9th Cir. 2004):

> Nevertheless, the district court made no findings with respect to the extent of Liang's training or sophistication at card cheating, and whether it required 'substantial' effort to obtain...Only where a defendant's ... skills are particularly sophisticated do they correspond to the Sentencing Commission's examples of 'special skills'.... In light of the district court's limited findings on the matter, the enhancement cannot stand.[14]

To permit the two (2) level enhancement to stand, devoid of any factual substantiation, is an unequivocal violation of Mr. Calabrese' due process rights.

---

[14] Internal citations and quotations omitted.

Moreover, an examination of the record reveals that Mr. Calabrese did not possess a special skill that significantly facilitated the commission or concealment of the crime. As the Government correctly noted in its Opposition, although a defendant may not have received substantial education, training, or licensing, courts have deemed it appropriate to apply the special skill enhancement. See U.S. v. Spencer, 4 F. 3d 115 (2d Cir. 1993). In the context of analogous mortgage fraud cases, courts have applied the special skill enhancement to those defendants who have received substantial education, training, and licensing. "Two levels were added for abuse of a position of trust or use of a special skill, because Hilgers was licensed, trained, and knowledgeable about the mortgage industry." U.S. v. Hilgers, 560 F. 3d 944, 945 (9th Cir. 2009). "While mortgage brokers may not endure the same level of training as a doctor, pilot, or lawyer, they certainly possess a skill not possessed by members of the general public *which is obtained through training and licensing*. Thus, the skill possessed by a mortgage broker qualifies as a special skill for the purposes of U.S.S.G. § 3B1.3." (Emphasis added) U.S. v. Longwell, 410 F. App'x 684, 692 (4th Cir. 2011). It is the Government who cited Longwell, supra., in support of its contention that the special skill enhancement should apply to Mr. Calabrese. USA v. Calabrese, Docket No. 3:14-cr-228(JBA), [Doc. #160-3 at 2], N.T. 9/8/15 at 14, JA 143. The distinction that the Fourth Circuit maintained in Longwell, that

17

mortgage brokers possess special skills due to their training and license, is consistent with the District Court's determination in Mr. Calabrese's case.

To be licensed as a mortgage loan originator does require substantial training and education, training and education that Mr. Calabrese received *subsequent to* the offense. USA v. Calabrese, Docket No. 3:14-cr-228(JBA), [Doc. #175-2 at 5-8], JA 98-101. In contrast, registration as a loan officer required no such training or education. Mr. Calabrese described his position:

> ...I generally received applications from people seeking loans by email, fax, or in writing. Sometimes I filled them out, other times, the people seeking loans would fill them out. They were general in nature, and required the applicant to list their contact information, employment, assets and liabilities. Some loans required the applicant to state their income...The banks would approve or disapprove loan applicants by internal formulas. I had nothing to do with the banks' decisions to approve or disapprove someone for a loan. USA v. Calabrese, Docket No. 3:14-cr-228(JBA), [Doc. #175-1 at 2], JA 93.

This is reflected in Mr. Calabrese's conduct, as described in his Statement Regarding the Offense, wherein Mr. Calabrese completed the subject loan application using the false information provided by Mr. Provenzano. USA v. Calabrese, Docket No. 3:14-cr-228(JBA), [Doc. #160 at ¶17]. Mr. Calabrese is, therefore, more akin to those defendants to whom the Fourth Circuit has held the special skill enhancement should **not** apply. See U.S. v. Gormley, 201 F.3d 290, 296 (4th Cir. 2000):

> Gormley only had experience in tax preparation, a skill that millions of Americans exercise every year. His role in the offenses was to gather

information from clients and to fabricate dependents, income information, filing status, and tax credit claims. These are not skills that one normally obtains through "substantial training," nor are they on par with the special skills possessed by "pilots, lawyers, doctors, accountants, chemists, and demolition experts." U.S.S.G. § 3B1.3 appl. note 2.

Similarly, the Government cited United States v. Berry, 717 F. 3d 823 (10th Cir. 2013) in support of its argument that the District Court correctly applied the special skills enhancement. USA v. Calabrese, Docket No. 3:14-cr-228(JBA), [Doc. #182 at 4], JA 119. Circuit Judge Holmes, concurring in the Court's decision in Berry, supra., wrote separately to caution:

First, adopting a reading that is consistent with the evident purpose of the enhancement—to define a relatively narrow subset of the possible universe of skills possessed by defendants that would warrant greater sanction when employed to facilitate the commission or concealment of crimes—the term "substantial" should be read as modifying all three terms that come after it. If this were not so, the second part of the two-part test would be rendered essentially surplusage...*Notably, this is true because almost every skill not possessed by the general public requires some minimal level of training, and since the terms in the clause are stated disjunctively, if the adjective "substantial" does not extend to the noun "training," in virtually every instance defendants would qualify for the enhancement if they had a skill not possessed by members of the general public.* (Emphasis added) U.S. v. Berry, 717 F. 3d 823, 837 (10th Cir. 2013)(Holmes, C.J. concurring).[15]

---

[15] See also U.S. v. Berry, 717 F. 3d 823, 837 n.1 (10th Cir. 2013)(Holmes, C.J., concurring): "Relatedly, a panel of our court has implicitly held that the mere possession of any licence does not necessarily mean that one has a special skill. *See United States v. Hinshaw*, 166 F.3d 1222, 1999 WL 9762, at *4 (10th Cir. Jan. 2, 1999) (holding that the defendant's possession of a firearms license was

Mr. Calabrese's employment as a loan officer does not axiomatically endow him with a special skill. Courts routinely distinguish between professional capability and a special skill within the penumbra of USSG §3B1.3.

> ...this adjustment becomes open-ended to the point of meaninglessness if the phrase 'special skill' is taken out of its context. There probably isn't an occupation on earth that doesn't involve some special skill not possessed by people outside it, and few of us who sit as judges would know how to do the work of most of the people who appear before us. So asking whether a skill is "special," in the sense of not being common among the adult population, like driving a car, doesn't get us very far toward deciding any cases. U.S. v. Lee, 296 F. 3d 792, 798 (9th Cir. 2002).

As Mr. Calabrese appraised the Court, "No specialized skill or education was necessary to register as a loan officer; in fact, my full-time profession was as a firefighter." USA v. Calabrese, Docket No. 3:14-cr-228(JBA), [Doc. #175-1 at ¶6], JA 92. The mere "knowledge of what income Provenzano would have to have," while it may be a skill, is insufficient to qualify as a special skill. See U.S. v. Godman, 223 F. 3d 320, 322 (6th Cir. 2000):

> We find no clear error in the district court's factual determinations that Godman acquired his computer skills in the course of designing a catalog for his father's business and that such skills are not shared by the

---

insufficient to qualify him for the special skill enhancement because "[t]he special skills involved in licensing pilots, lawyers, doctors, and accountants are not comparable to the somewhat perfunctory qualifications the law requires to obtain a firearms license"). Although *Hinshaw* is not binding authority, we find its reasoning persuasive on this point."

general public. Nevertheless, the district court stressed these factors overmuch in determining whether Godman's skill was 'special' for purposes of § 3B1.3. As the Application Note's reference to the substantial training of such professionals as doctors and accountants suggests, emphasis is better placed on the difficulty with which a particular skill is acquired.

In applying the enhancement for use of a special skill, the District Court postulated:

And it seems to the Court that Mr. Calabrese's role, utilizing his skills as the mortgage broker, both his license, which gives the imprimata of integrity to the application submitted, and his knowledge of– that assisted Provenzano, advised Provenzano, on what fraudulent numbers he should be submitting in order to get the loan, means that this two level enhancement under 3B1.3 is applicable. N.T. 9/8/15 at 15, JA 144.

It is clear from a reading of the indictment, however, that the bank did not act in reliance on Mr. Calabrese, and there was no "imprimata of integrity" engendered by *his* submission of the loan application.  According to the indictment: "In or about November 2006, a company owned and controlled by RYAN GEDDES provided verification for the above-described, false employment and income representations about Provenzano that were listed on the loan refinancing application documents for the 27 Palmer Road property." USA v. Calabrese, Docket No. 3:14-cr-228(JBA), [Doc. #1 at 5-6], JA 17-18. "In or about July 2007, a company owned and controlled by RYAN GEDDES provided verification for the above-described, false employment and income representations about Provenzano that were listed in the loan refinancing application documents for the 669 Goshen Road property." USA v. Calabrese, Docket

No. 3:14-cr-228(JBA), [Doc. #1 at 6], JA 18.  Had the bank attached an "imprimata

of integrity" to Mr. Calabrese's submission, there would have been no independent

verification undertaken of Mr. Provenzano's employment and income by the bank.

The bank's independent verification, both of the November 2006 loan at issue, and

again in July 2007, demonstrates there was no reliance on Mr. Calabrese regarding

the veracity of the information contained in the application.  To the contrary, the bank

performed its own due diligence, irrespective of the fact that the information was

supplied by Mr. Calabrese.

   Further, Mr. Calabrese's position as a loan officer lacked any professional or

managerial discretion, factors that are evaluated to determine whether a defendant

occupies a position of trust pursuant to USSG § 3B1.3. U.S. v. Laljie, 184 F. 3d 190,

194-195 (2d Cir. 1999); U.S. v. Allen, 201 F. 3d 163, 166 (2d Cir. 2000).  That a loan

officer operating as Mr. Calabrese would not be considered to occupy a position of

trust, indicates correspondingly that Mr. Calabrese did not possess a special skill,

under USSG §3B1.3.

> The special skill adjustment falls within the same guideline as an
> adjustment for people who abuse a "position of public or private trust,
> or used a special skill." The application notes limit the position of trust
> adjustment to people with "professional or managerial discretion,"
> analogous to attorneys who hold their clients' money in trust, physicians
> who treat patients, and "executives" (but not tellers) who manage a
> bank's loans.  The application note for special skills parallels the
> application note for positions of trust in its reference to people trained

22

or employed at a high level. U.S. v. Lee, 296 F. 3d 792, 799 (9th Cir. 2002).

The Second Circuit has consistently stated that someone situated as Mr. Calabrese does not occupy a position of trust. "Arms-length commercial dealings do not give rise to the type of fiduciary relationship contemplated by § 3B1.3...Rather, an adjustment under this Guideline is appropriate where the defendant misuses substantial discretionary judgment that is ordinarily given considerable deference to achieve or conceal criminal conduct." (Internal citations and quotations omitted) U.S. v. Thorn, 446 F. 3d 378, 388-389 (2d Cir. 2006).

> An abuse of trust enhancement may not be imposed on a defendant convicted of fraud solely because of a violation of a legal obligation to be truthful and a victim's reliance on a misrepresentation...Every fraud involves these elements. Instead, a court must determine the "extent to which the [defendant's] position provides the freedom to commit a difficult-to-detect wrong."...In other words, we have said, the defendant's position must involve discretionary authority...In addition, this discretion must have been entrusted to the defendant by the victim. (Internal citations omitted) U.S. v. Hirsch, 239 F. 3d 221, 227 (2d Cir. 2001).

U.S. v. Jolly, 102 F. 3d 46, 48-49 (2d Cir. 1996); see also U.S. v. Fuchs, 635 F. 3d 929 (7th Cir. 2011). If Mr. Calabrese cannot be considered to occupy a position of trust, he should not be regarded as possessing a special skill. "It would be incongruous for the Guidelines to exclude employees in positions similar to bank tellers from the § 3B1.3 definition of positions of trust, only to include them under

the section's special skill provision." U.S. v. Lee, 324 F. Supp. 2d 165, 168 (D. Me. 2004).  See also U.S. v. Marles, 408 F. Supp. 2d 38, 49 (D. Me. 2006):

> Unlike bank tellers, most members of the general public would not know how to operate a bank's computer system, access customer banking accounts, and properly credit and debit entries. Yet, the Guidelines expressly eliminate bank tellers from § 3B1.3 enhancements for a violation of a position of trust. Having expressly eliminated bank tellers from the two-level enhancement for abuse of a position of trust, it would be at best incongruous for the same Guideline provision to enhance their sentences for use of a special skill.

The Ninth Circuit has espoused:

> We think that it is no accident that the special skill enhancement is coupled with the abuse of trust enhancement in section 3B1.3. In a sense, abuse of a special skill is a special kind of abuse of trust. It is a breach of the trust that society reposes in a person when it enables him to acquire and have a skill that other members of society do not possess. That special societal investment and encouragement allows a person to acquire skills that are then held in a kind of trust for all of us. When the person turns those skills to evil deeds, a special wrong is perpetrated upon society, just as other abuses of trust perpetrate a special wrong upon their victims. U.S. v. Mainard, 5 F. 3d 404, 406 (9th Cir. 1993).

As Mr. Calabrese cannot be said to occupy a position of trust, he should not be considered to possess a special skill within the meaning of USSG § 3B1.3.

Additionally, as defense counsel noted in Mr. Calabrese's Sentencing Memorandum, "...unnamed co-conspirator Jacqueline Polverari, who used her position as a settlement agent to 'forge[] documents to secure mortgage funds from banks' to net more than $1.8 million, see Docket No. 12-cr-210-JBA, Dkt. #45, p.1,

24

did not receive a special skill adjustment at her sentencing." <u>USA v. Calabrese</u>,

Docket No. 3:14-cr-228(JBA), [Doc. #163 at 9], JA 51. It would be incongruous to

apply the special skill enhancement to Mr. Calabrese, a loan officer, and not to Ms.

Polverari, a settlement agent, both of whom were able to participate in the fraud due

to their respective positions.

Based on the afore-stated, Mr. Calabrese respectfully submits that he did not

utilize a special skill.

### 2. <u>Jason Calabrese did not Utilize a Special Skill that Significantly Facilitated the Commission or Concealment of the Offense</u>

Assuming *arguendo* that Mr. Calabrese employed a specialized skill, this

conduct did not significantly facilitate the commission or concealment of the offense.

The District Court opined:

> ...that these loans couldn't have been achieved without Mr. Calabrese's
> participation and signoff as the mortgage broker, and his knowledge of
> what income Provenzano would have to have, such that that information
> would then appear on the application in order to "qualify" for the
> mortgage loans being sought, and that is indeed what happened. And it
> seems to the Court that Mr. Calabrese's role, utilizing his skills as the
> mortgage broker, both his license, which gives the imprimata of integrity
> to the application submitted, and his knowledge of— that assisted
> Provenzano, advised Provenzano, on what fraudulent numbers he should
> be submitting in order to get the loan, means that this two level
> enhancement under 3B1.3 is applicable. <u>N.T. 9/8/15 at 14-15</u>, <u>JA 143-144</u>.

As previously articulated, Mr. Calabrese was not a licensed broker at the time of the

offense. Moreover, as evinced by the bank's independent verification of Mr.

Provenzano's income and employment, an "imprimata of integrity" was not bestowed

upon the application due to Mr. Calabrese's submission of the application. See e.g.

U.S. v. Way, 465 F. App'x 391, 394 (5th Cir. 2012)(Finding that enhancement for

abuse of position of trust was warranted): "Because Way was a licensed loan officer

working for a mortgage brokerage office, the lenders expected Way to perform due

diligence in preparing loan packages and trusted her to verify and submit accurate and

truthful information in loan applications." The only remaining factor therefore, is

whether Mr. Calabrese advised Mr. Provenzano "on what fraudulent numbers he

should be submitting in order to get the loan" significantly facilitated the offense.

The Probation Officer postulated:

> As to the issue of whether this skill significantly facilitated the commission of the crime, the probation officer believes the facts meet this burden as well. As to the Palmer Road property, Mr. Provenzano asked Mr. Calabrese how much income he needed to show in order to qualify for the mortgage. After performing a "rough calculation" utilizing his knowledge of the mortgage industry, Mr. Calabrese advised Mr. Provenzano of how much monthly income he would need to show to qualify. That amount was thereafter used on the application. On the refinance loan, Mr. Provenzano stated he had monthly earnings of $28,000.00. Based on his knowledge of the mortgage industry, Mr. Calabrese advised Mr. Provenzano he only needed to list monthly earnings of $20,000.00. Despite his advice, Mr. Provenzano told Mr. Calabrese to keep the income at $28,000...The probation officer maintains that by using his knowledge of the mortgage industry to establish the minimum income necessary, Mr. Calabrese used his special skill as a mortgage broker in a manner that facilitated the commission

of the offense. <u>USA v. Calabrese</u>, Docket No. 3:14-cr-228(JBA), [Doc. #160-4 at 4].

Initially, the Probation Officer's assessment dilutes the requirements of the enhancement. Although Mr. Calabrese's calculation may have "facilitated" the fraud, it certainly did not *significantly* facilitate the offense. "In order for the Guideline for use of a special skill to apply, that use must do more than merely aid in the concealment of the offense; it must significantly facilitate the concealment of the offense. See U.S.S.G. § 3B1.1. To apply the Guideline to [the defendant] would read this language out of the Guideline, and that we will not do." <u>U.S. v. Gallardo</u>, 266 F. App'x 468, 469-470 (7th Cir. 2008).

There was nothing intrinsically criminal in Mr. Calabrese's performance of the "rough calculation" necessary to qualify for the mortgage. The District Court maintained: "...that these loans couldn't have been achieved without Mr. Calabrese's participation and signoff as the mortgage broker, and his knowledge of what income Provenzano would have to have." <u>N.T. 9/8/15 at 14-15</u>, <u>JA 143-144</u>. To the contrary, presumably Mr. Provenzano could have gone to any loan officer and received the same advice: what minimum income he needed to qualify for the mortgage. Qualification for the mortgage did not ensure that the mortgage will be approved by the bank. A minimum income level and employment were necessary to "qualify" for the mortgage, but they were not the only factors considered by the bank. As Mr.

Calabrese explained in his affidavit, "banks would approve or disapprove loan applicants by internal formulas." USA v. Calabrese, Docket No. 3:14-cr-228(JBA), [Doc. #175-1 at ¶12], JA 93.

As trial counsel argued, Mr. Calabrese is most similarly situated to the defendant in U.S. v. Elefant, 999 F. 2d 674 (2d Cir. 1993), to whom the Second Circuit found the special skill enhancement did not apply.

> If we assume that Elefant's knowledge of Hebrew and skills as a translator constitute a "special skill," the evidence indicates no more than that this skill placed Elefant in a position where he had the unfortunate opportunity to commit this crime. But because Elefant did not contemplate committing this offense until he learned of the new courier and received "guidance" from Rabbi Teitz, the critical question is whether Elefant's special skill "facilitate[d] significantly" the offense after this point. U.S. v. Elefant, 999 F. 2d 674, 678 (2d Cir. 1993).

Mr. Calabrese's employment as a loan officer merely placed him in a position where he had the opportunity to commit the offense, knowing the income that would be necessary to qualify for a mortgage. As in Elefant, supra., the "critical question" is whether Mr. Calabrese's special skill facilitated significantly the offense after the calculation, the decision to submit the application although he believed it contained falsified information. Mr. Calabrese admitted:

> In the fall of 2005, Tom Provenzano ("Tom") met with me to arrange for financing to buy the house at 27 Palmer Road in Morris, Connecticut. At that time, the house belonged to Ryan Geddes ("Ryan"). After Tom asked me how much income he would need to qualify for a loan to buy the house, I performed a rough calculation and told him that his income

28

would need to be about $20,000 per month. Tom said he was making that much and told me to put that on the application. I did not think that Tom was making that much income, but I believed the loan would be approved on a stated income basis because the employment Tom was listing on the application as [sic] in the construction industry. I also knew, from prior contact with Tom, that information he provided on the loan application concerning the length of his employment at Elite Construction was not accurate. Nonetheless, I turned a blind eye and did not raise any of the issues with the bank. Instead I allowed the application to be processed and approved. After the loan closed, I earned a commission from the bank.

In the fall of 2006, Tom and I discussed a refinance of his 2005 loan for 27 Palmer Road. This time, Tom reported an income of $28,000 per month. I did not believe him. I told Tom that he would only have to report a monthly income of $20,000 to qualify for this refinance, which again was a stated income loan application. But Tom said to keep the stated income at $28,000. Though I knew this was incorrect, I did not take any steps to investigate Tom's income, nor did I report the issue to the bank when the application was submitted. The loan was approved and, after it closed, I earned a commission from the bank. USA v. Calabrese, Docket No. 3:14-cr-228(JBA), [Doc. #160 at ¶17].

As articulated in the preceding section, the bank performed independent verification of Mr. Provenzano's income and employment, which was verified by a company owned and controlled by Mr. Geddes, not Mr. Calabrese. The bank exhibited no expectation that Mr. Calabrese verified the information that was transmitted in the application. It was as a result of the bank's purported *verification* of the information contained in the loan application that the subject mortgages were approved. This is reflected in the plain language of the indictment: "In or about November 2006, as a result of the above-described false representations in the mortgage loan refinancing

29

application documents for the 27 Palmer Road property, World Savings Bank FSB issued a mortgage refinancing loan to Provenzano in the amount of $936,000." USA v. Calabrese, Docket No. 3:14-cr-228(JBA), [Doc. #1 at 6], JA 18.

The conveyance of false information, or the failure to correct false information, does not implicate a special skill. See e.g. U.S. v. Weinstock, 153 F. 3d 272, 281 (6th Cir. 1998): "Weinstock did not use his podiatric skills to facilitate the crime. Although performing unnecessary medical procedures requires a special skill, refraining from providing such services and falsely billing therefore does not." U.S. v. Garfinkel, 29 F. 3d 1253, 1261 (8th Cir. 1994): "The district court refused to grant the enhancement, agreeing with Garfinkel that his special skills as a psychiatrist were not abused to perpetrate the crimes, but rather, his managerial skills were abused." U.S. v. Hickman, 991 F. 2d 1110, 1113 (3d Cir. 1993):

> At all events, to qualify under the guidelines, the special skill must, at a minimum, be used actually to commit or conceal the crime, rather than merely to establish trust in a victim upon whom the defendant then perpetrates a garden variety fraud...We agree that such a direct use is required and it is not present here. Hickman simply took advantage of the trust engendered in a business-client relationship to misappropriate the MacEwans' money.

U.S. v. Marles, 408 F. Supp. 2d 38, 50-51 (D. Me. 2006):

> It is true that through training and experience, Mr. Marles was allowed to gain lending authority and to make credit alterations in the first place. But, there is no evidence that he called on any of this training and experience to perpetrate the crime...But, this Court cannot conclude

30

> based on the evidence in this record that Mr. Marles actually used his
> higher training and experience as a Senior Credit Analyst to perpetrate
> this crime. Instead, he used relatively unsophisticated skills-the use of
> a computer password and the ability to make a mechanical change on a
> credit limit-to commit this offense...

Mr. Calabrese's skill as a loan officer did not significantly facilitate the bank fraud;

it merely placed Mr. Calabrese in a position to participate in bank fraud.

Moreover, the bank's verification distinguishes Mr. Calabrese's case from the

defendant in U.S. v. Grant, 479 F. App'x 904 (11th Cir. 2012).[16] **"Because of**

**Grant's fraud,**[17] **lenders approved home loans** for what they believed to be between

---

[16] Cited by the Government in support of the application of the special skill enhancement. USA v. Calabrese, Docket No. 3:14-cr-228(JBA), [Doc. #160-3 at 2].

[17] "The evidence showed that Grant fraudulently inflated his clients' monthly incomes and bank-account balances on their loan applications, and three mortgage underwriters testified that a client's monthly income and bank-account balance influence a lender's decision to approve a loan. The evidence also showed that Grant had his clients execute real estate purchase agreements that listed artificially inflated purchase prices. An underwriter testified that lenders review copies of those agreements "to know how much the property was actually being sold for and what the terms of the purchase agreement were to make sure they were in line with [their] guidelines." Also, one of the clients that Grant used in his scheme testified that Grant gave her cash in the amount of the fraudulent, nonexistent down payment and told her to buy a cashier's check in that amount at her bank. She told the jury that Grant said she had to present that check at closing "to show that th[e] money came from [her]." An underwriter testified that "any money that's due at closing, that's supposed to come directly from the borrow[er] and supposed to come out of the bank account that's listed on the [the borrower's loan application]." Grant, supra. at 906-907.

80% and 90% of a home's purchase price but that were actually for 100% of that price." (Emphasis added) U.S. v. Grant, 479 F. App'x 904, 905 (11th Cir. 2012). Mr. Calabrese's special skill was limited to "generalities regarding the mortgage industry" and not utilized in a manner that significantly facilitated the crime. See e.g. U.S. v. Ugwu, 539 F. App'x 35, 41 (3d Cir. 2013).

> In this case, the Presentence Report accurately stated that Mir repeatedly falsified information on loan applications to make it appear that borrowers qualified for financing when in fact they did not. Unlike in Fuchs, *the evidence in this case was not limited to generalities concerning the structure of the mortgage financing industry. Instead, there was evidence that Mir, as a licensed mortgage loan officer, used phony verifications of employment, earnings and credit history to induce lenders who reposed trust in him to extend more than $2 million in credit over a period of time exceeding three years.* It is evident that Mir's position made the fraud more difficult to detect, considerable authority to make the transactions was accorded Mir, and there was substantial reliance upon his integrity. Under the circumstances, the District Court did not plainly err in finding that Mir both occupied a position of trust vis a vis the lenders, and abused that trust to facilitate and conceal the crime. (Emphasis added).

The bank did not approve the loan based on the representations in the application; the loan was approved because the bank was able to verify Mr. Provenzano's false representations.   Indeed, Mr. Provenzano's representations disregarded Mr. Calabrese's calculation: "Based on his knowledge of the mortgage industry, Mr.

Calabrese advised Mr. Provenzano he only needed to list monthly earnings of $20,000.00. Despite his advice, Mr. Provenzano told Mr. Calabrese to keep the income at $28,000." USA v. Calabrese, Docket No. 3:14-cr-228(JBA), [Doc. #160-4 at 4]. Mr. Provenzano stated a false income in excess of that which Mr. Calabrese apprised him would be necessary to qualify for a mortgage. It was the information generated by Mr. Provenzano, not Mr. Calabrese that was utilized in the application. Mr. Calabrese submitted the application to the bank, and Mr. Geddes then had his company confirm Mr. Provenzano's purported income and employment. Mr. Calabrese's submission of the application did not utilize a special skill, nor did the utilization a special skill- the calculation- significantly facilitate the crime.

### 3.    The Use of Special Skill Enhancement is Subsumed within the Fraud Conviction

In the alternative, should this Court find that Mr. Calabrese utilized a special skill that significantly facilitated the commission or concealment of the offense, the enhancement cannot be applied as the conduct was already included in the base offense level for bank fraud.[18] USSG § 3B1.3 includes the caveat that, "This adjustment may not be employed if an abuse of trust or skill is included in the base offense level or specific offense characteristic." USSG § 3B1.3.

---

[18] As this argument was not raised below, it may be subject to review for plain error. U.S. v. Thomas, 274 F. 3d 655, 660 (2d Cir. 2001).

"The well established elements of the crime of bank fraud are that the defendant (1) engaged in a course of conduct designed to deceive a federally chartered or insured financial institution into releasing property; and (2) possessed an intent to victimize the institution by exposing it to actual or potential loss." U.S. v. Barrett, 178 F. 3d 643, 647-648 (2d Cir. 1999).[19]  In this case, the "course of conduct" alleged was the transmission of the fraudulent loan application.  The Government argued at Mr. Calabrese sentencing:

> And the government views it differently, and I think the cases would suggest differently, that it's the exist– if the existence of the special skill is the thing that made it possible, what otherwise would not have been possible or feasible, then I think the special skill enhancement would apply.  From the lending bank's perspective...it was his status a mortgage broker, registered or certified or licensed mortgage broker, who also knew how to fill out the forms in a way that he, more than a layperson would know would be accepted by the bank, would, pardon my analogy, but get the goal and get the puck into the goal of a mortgage, based on false facts. N.T. 9/8/15 at 13, JA 142.

The Court similarly stated:

> The Court is of the view that these loans couldn't have been achieved without Mr. Calabrese's participation and signoff as the mortgage broker, and his knowledge of what income Provenzano would have to

---

[19] See also 18 U.S.C. §1344: "Whoever knowingly executes, or attempts to execute, a scheme or artifice--(1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises; shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both."

have, such that that information would then appear on the application in order to "qualify" for the mortgage loans being sought, and that is indeed what happened. N.T. 9/8/15 at 14-15, JA 143-144.

Accepting the Government's recitation, Mr. Calabrese's utilization of a special skill comprised the core of the offense.   Consequently, to apply the special skill enhancement would punish Mr. Calabrese for that conduct which he has already plead guilty.  As the Second Circuit has previously held with respect to an abuse of trust, the conduct that forms the basis of the conviction, must be "independently criminal," and not itself the abuse of trust.

> Section 3B1.3 does not apply if the abuse of trust is already "included in the base offense level or specific offense characteristic." U.S.S.G. § 3B1.3. **The conduct that is the basis of the conviction must be independently criminal, as in the Commentary's examples noted above, and not itself the abuse of trust.** Broderson's fraudulent conduct was signing the certificate stating that Grumman had complied with TINA and FAR. Any abuse of trust was therefore 'included in the base offense level' of six for fraud and deceit. (Emphasis added) U.S. v. Broderson, 67 F. 3d 452, 456 (2d Cir. 1995).

See also U.S. v. Jolly, 102 F. 3d 46, 49 (2d Cir. 1996):

> Where fraud occurs in arm's-length transactions not involving fiduciary-like relationships, the "trust" that is "abused" is simply the reliance of the victim on the misleading statements or conduct of the defendant. The trust in short is a specific offense characteristic of fraud, and a Section 3B1.3 enhancement is inappropriate. In the instant matter, the lenders' trust in Jolly was simply their reliance on his representations about Microtech's ongoing business and the appearance created by the repayments. Such reliance is the hope of every defendant who engages in fraud.

As articulated by the Government, it was Mr. Calabrese's special skill that constituted the substance of the offense: the fraudulent representation to the bank of Mr. Provenzano's employment and income.[20]   According to Mr. Calabrese's plea agreement:

> He [Mr. Calabrese] understands that to be guilty of this offense, the following essential elements of the offense must be satisfied:
>
> 1. Two or more persons, in some way or manner, agreed to try to accomplish a common and unlawful plan to commit bank fraud, specifically:
>
>    a. A scheme to obtain monies under the control of a financial institution;
>
>    b. Carried out by means of false or fraudulent pretenses, representations or promises; and
>
>    c. Targeting a financial institution that was, during the time of the scheme, insured by the Federal Deposit Insurance Corporation or chartered by the United States.
>
> 2. The Defendant knew the unlawful purpose of the plan and willfully joined in it. USA v. Calabrese, Docket No. 3:14-cr-228(JBA), [Doc. #100 at 1-2], JA 34-35.

The application of the special skill enhancement would therefore be duplicative of the

---

[20] Compare the case *sub judice* with U.S. v. Connell, 960 F. 2d 191, 198 (1st Cir. 1992) wherein the First Circuit found the special skill enhancement could be applied: "Appellant's use of his skill as a stockbroker to conceal his crime was not a necessary concomitant to the commission of the offense; it merely made matters easier (and less risky) for him. It was, a fortiori, not a specific offense characteristic within the meaning of the sentencing guidelines."

punishment for the bank fraud itself. Consequently, the enhancement may not be applied. See e.g. U.S. v. Hussey, 254 F. 3d 428, 432 (2d Cir. 2001)(distinguishing the application of the enhancement from the factual circumstances of U.S. v. Echevarria, 33 F. 3d 175 (2d Cir. 1994):

> Second, we note that the two-level enhancement [under 3B1.3] here, unlike the one in *Echevarria*, was not duplicative of the punishment for the underlying offenses of conviction. The "core of the offenses," *Echevarria*, 33 F.3d at 181, of which Hussey and Alexander were convicted, was not their misrepresentations as to their status as licensed stockbrokers; rather, the "core of the[ir] offenses" was their sale of securities without disclosing their commissions. Their misrepresentations as to their status as licensed stockbrokers were simply steps they took to commit these "core" offenses. In contrast to the enhancement in *Echevarria*, therefore, the enhancement here did not duplicate the punishment for the underlying offenses of conviction.

See also U.S. v. Garrison, 133 F. 3d 831, 843 (11th Cir. 1998): "Since Garrison's base fraud crime was the submission of false statements on cost reports submitted to Aetna for Medicare reimbursement, she cannot receive an enhancement for abuse of a position of public trust based on the same conduct under the specific terms of section 3B1.3."

The conviction and the special skill enhancement are premised on entirely identical conduct. There is no independence of criminality that the Second Circuit mandated in Broderson, supra. The special skill enhancement cannot therefore be applied to Mr. Calabrese.

## CONCLUSION

WHEREFORE, in consideration of the above, Mr. Jason Calabrese respectfully requests that his case be remanded to the Connecticut District Court so that he may be re-sentenced without the application of the special skill enhancement, USSG §3B1.3.

Respectfully-submitted,

Defendant-Appellant,
JASON CALABRESE
/s/ Aaron J. Romano
Attorney for the Defendant-Appellant
Aaron J. Romano, Esq.
Bar No.: ct20100
Aaron J. Romano, P.C.
55 Woodland Avenue
Bloomfield, Connecticut 06002
T (860)286-9026/F (860)286-9028
aaronromano@attorneyaaronromano.com

December 17, 2015

38

## CERTIFICATION

I HEREBY CERTIFY that on this 18th day of December 2015, two copies of the foregoing Brief and Joint Appendix were sent via First Class Mail to Henry K. Kopel, Esq. and Sandra Slack Glover, Esq., United States Attorney's Office, 157 Church Street, New Haven, Connecticut and one copy was sent via First Class Mail to the Defendant-Appellant, Jason Calabrese.

/s/Aaron J. Romano
Attorney for the Defendant-Appellant
Aaron J. Romano, Esq.

## CERTIFICATION PER FED. R. APP. P. 32(a)

1.　　This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 10,413 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii)(table of contents, table of citations, addendum, and certificates of counsel).

2.　　This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using WordPerfect Office 12 in font size 14 and type style Times New Roman.

December 17, 2015

/S/Aaron J. Romano
Attorney for the Defendant-Appellant
Aaron J. Romano, Esq.