MANDATE

15-2995-cr
United States v. Calabrese

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 19th day of September, two thousand sixteen.

PRESENT:  REENA RAGGI,
          DENNY CHIN,
          CHRISTOPHER F. DRONEY,
                  *Circuit Judges*.

------------------------------------------------------------------
UNITED STATES OF AMERICA,
                  *Appellee*,

        v.                                          No. 15-2995-cr

JASON CALABRESE,
                  *Defendant-Appellant*,

RYAN GEDDES, RICHARD GEDDES, and DUSTIN WHITTEN,
                  *Defendants*.*
------------------------------------------------------------------

APPEARING FOR APPELLANT:   NAOMI FETTERMAN (Aaron J. Romano, *on the brief*), Aaron J. Romano, P.C., Bloomfield, Connecticut.

APPEARING FOR APPELLEE:    HENRY H. KOPEL, Assistant United States Attorney (Sandra S. Glover, Assistant United States Attorney, *on the brief*), *for* Deirdre M.

---
* The Clerk of Court is directed to amend the caption as set forth above.

1

Daly, United States Attorney for the District of Connecticut, New Haven, Connecticut.

Appeal from a judgment of the United States District Court for the District of Connecticut (Janet Bond Arterton, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment entered on September 23, 2015, is AFFIRMED.

Defendant Jason Calabrese, a former loan officer, was convicted after a guilty plea of conspiracy to commit bank fraud, see 18 U.S.C. §§ 1344, 1349, and sentenced to a below-Guidelines prison term of six months, which he has yet to begin serving.[1] On appeal, Calabrese challenges only the district court's imposition of a two-level Guidelines enhancement for using a "special skill" in a manner that "significantly facilitated" his commission or concealment of the offense. U.S.S.G. § 3B1.3; see United States v. Downing, 297 F.3d 52, 64 (2d Cir. 2002). We review de novo the legal question of what constitutes a special skill, and review for clear error a sentencing court's finding that use of a special skill significantly facilitated the commission or concealment of an offense. See United States v. Kimber, 777 F.3d 553, 563 (2d Cir. 2015). In doing so, we assume the parties' familiarity with the facts and record of prior proceedings, which we reference only as necessary to explain our decision to affirm.

---

[1] This sentence represented downward variances from the applicable 15-to-21-month range under the 2014 Guidelines (which governed Calabrese's September 8, 2015 sentencing), and the applicable 12-to-18-month range under the 2015 Guidelines, which—although not effective until November 1, 2015—the district court applied to Calabrese's benefit at sentencing.

1.      Special Skill

Calabrese faults the district court's conclusion that he possessed a § 3B1.3 "special skill," arguing that, at the time of the charged conspiracy (November 2005 through November 2006), he (a) was not a <u>licensed</u> mortgage broker, (b) lacked professional or managerial discretion, and (c) had not received substantial training or education.[2]  To the extent these claims are even cognizable on appeal, they are meritless.

Calabrese argues that, although records identified by the Probation Office ("Probation") indicate that he was "<u>registered</u> as a <u>loan officer</u> [in 2002,] he did not become a licensed mortgage originator until 2010." Appellant's Br. 12 (emphasis in original).  Calabrese did not timely raise this issue below.[3]  Moreover, he points to no

---

[2] While Calabrese also complains that the court failed to consider the absence of lender reliance on representations in applications for stated-income loans, he does not explain why this omission—to the extent preserved for appeal—is relevant to the special-skill determination.  Accordingly, we consider it only in reviewing the court's significant-facilitation conclusion.  See <u>infra</u> Section 2.

[3] In urging otherwise, Calabrese relies on defense counsel's objection to the initial presentence report ("PSR"), in which counsel stated that "Calabrese's work as a mortgage broker, during the time period at issue, did not involve any training or licensing. (We understand that Mr. Calabrese first received his license on or about March 31, 2010.)." Def.'s Aug. 5, 2015 Ltr. at 2, <u>United States v. Calabrese</u>, No. 3:14cr228 (JBA), ECF No. 160-2.  Probation responded, "This is inconsistent with the information obtained from the National Mortgage Licensing System, which notes he was first licensed as a mortgage loan originator effective October 1, 2002." PSR Addendum at 3, <u>United States v. Calabrese</u>, No. 3:14cr228 (JBA), ECF No. 160-4.  At the sentencing hearing, when asked by the court whether there was "any objection to factual statements in the Presentence Report that require the Court's resolution," defense counsel responded, "[N]o, other than what has already been included in our briefing." J.A. 134–35.  Calabrese did not further pursue the licensure issue until September 22, 2015—14 days after he had been sentenced—when, through newly obtained counsel, he filed a Fed.

3

record evidence of any material difference between a registered loan officer and licensed mortgage originator for purposes of § 3B1.3 analysis.[4]  Accordingly, we deem the objection waived.  See United States v. Jass, 569 F.3d 47, 66 (2d Cir. 2009) ("When a defendant fails to challenge factual matters contained in the presentence report at the time of sentencing, the defendant waives the right to contest them on appeal." (emphasis added) (internal quotation marks omitted)); see also Fed. R. Crim. P. 32(i)(3)(A) ("At sentencing, the court . . . may accept any undisputed portion of the presentence report as a finding of fact.").

The same waiver conclusion obtains with respect to Calabrese's claimed lack of professional or managerial discretion, a conclusory allegation that he never made in the district court.  See United States v. Jass, 569 F.3d at 66.  In any event, the record incontrovertibly demonstrates Calabrese's exercise of discretion in (1) recommending particular loan products, (2) accepting his client's income representations despite knowledge of their falsity, and (3) submitting false loan applications to lenders.[5]

---

R. Crim. P. 35 motion identifying the distinction described above and suggesting that, unlike a licensed mortgage originator, "a registered loan officer [has] no special training or education."  J.A. 89.  In any event, Calabrese does not assert that this filing preserved the issue for appeal.

[4] Thus, even if Calabrese had not waived the argument, we would resolve it against him. As explained below, the district court did not err in concluding that Calabrese possessed a special skill based on knowledge he acquired through years of experience.

[5] Accordingly, we need not address Calabrese's argument—also raised for the first time on appeal—that whether a defendant exercises such discretion is relevant to the district court's special-skill assessment because the same inquiry governs application of the § 3B1.3 enhancement for abuse of a position of trust.  See U.S.S.G. § 3B1.3 cmt. n.1

Insofar as Calabrese maintains that his lack of substantial training or education precludes a special-skill enhancement, he relies on Guidelines commentary explaining that "'[s]pecial skill' refers to a skill not possessed by members of the general public and <u>usually</u> requiring substantial education, training or licensing." U.S.S.G. § 3B1.3 cmt. n.4 (emphasis added). The argument is defeated by precedent construing the modifier "usually" to signal that a § 3B1.3 enhancement is not categorically limited to "those with formal educations or professional skills." <u>United States v. Spencer</u>, 4 F.3d 115, 120 (2d Cir. 1993); <u>accord</u> <u>United States v. Gormley</u>, 201 F.3d 290, 296 (4th Cir. 2000); <u>United States v. Noah</u>, 130 F.3d 490, 500 (1st Cir. 1997). The Guidelines require only that the relevant skill (1) be obtained through the equivalent of such training or education and (2) not be possessed by the general public. <u>See</u> <u>United States v. Gormley</u>, 201 F.3d at 296. That is this case because Calabrese's knowledge of the approval processes for various loan products, as well as his ability to calculate the minimum income necessary for clients to obtain desired loans, "exceeds the knowledge of the average person," <u>United States v. Fritzson</u>, 979 F.2d 21, 23 (2d Cir. 1992), and was acquired through years of on-the-job experience.[6]

---

(explaining that "public or private trust" position is "characterized by professional or managerial discretion").

[6] Our sister circuits have applied the same reasoning to uphold special-skill enhancements to loan officers and mortgage brokers alike. <u>See</u> <u>United States v. Grant</u>, 479 F. App'x 904, 906 (11th Cir. 2012) ("Grant gained a detailed knowledge of loan-application and loan-processing procedures during the three years he worked as a loan officer or mortgage broker before committing mortgage fraud. That knowledge is a special skill . . . because 'an average person off the street does not possess' it." (quoting <u>United States v. De La Cruz Suarez</u>, 601 F.3d 1202, 1219 (11th Cir. 2010))); <u>United</u>

5

In sum, we identify no error in the district court's conclusion that Calabrese possessed a special skill for § 3B1.3 purposes.

2. <u>Significant Facilitation</u>

Calabrese argues that, even if he possessed a special skill, the evidence was insufficient to show that his skill "significantly facilitated" his bank fraud offense. U.S.S.G. § 3B1.3. In finding significant facilitation, the district court concluded that fraudulently obtained loans would not have been approved without Calabrese's "participation and signoff as the mortgage broker, and his knowledge of what income [his client] would have to have, such that that information would then appear on the application in order to 'qualify.'" J.A. 144. This preponderance determination was not clearly erroneous. See <u>United States v. Nuzzo</u>, 385 F.3d 109, 115–17 (2d Cir. 2004) (reviewing preponderance finding of significant facilitation for clear error).

In urging otherwise, Calabrese insists that the indictment suggested that lenders independently verified loan applicants' income and employment representations. See Appellant's Br. 29–30 (quoting Indictment ¶ 19, <u>United States v. Calabrese</u>, No. 3:14cr228 (JBA), ECF No. 1). The argument fails because Calabrese pleaded guilty to bank fraud <u>conspiracy</u>, and § 3B1.3 applies to inchoate crimes if the district court determines "with reasonable certainty" that the defendant "specifically intended" to use his special skill "in a manner that <u>would have</u> significantly facilitated the . . . object of the

---

States v. Longwell, 410 F. App'x 684, 691–92 (4th Cir. 2011) ("While mortgage brokers may not endure the same level of training as a doctor, pilot, or lawyer, they certainly possess a skill not possessed by members of the general public which is obtained through training and licensing. Thus, the skill possessed by a mortgage broker qualifies as a special skill . . . .").

6

conspiracy." United States v. Downing, 297 F.3d at 65 (emphasis added) (internal quotation marks omitted). Such a determination was supported here by Calabrese's admissions that he (a) submitted loan applications intending that approval be granted on a stated-income (i.e., unverified) basis and, in doing so, (b) relied on his knowledge—acquired through mortgage-brokering experience—as to the particular income and employment representations necessary to succeed in that objective. See J.A. 144; PSR ¶ 17. In any event, Calabrese mischaracterizes the indictment. While it alleged that a coconspirator falsely verified the November 2006 application's representations, the indictment made no such allegation with respect to the original loan obtained in November 2005.

Insofar as Calabrese concedes that he "may have 'facilitated' the fraud," but contends that he did not "significantly facilitate" it because "any loan officer" would have advised Calabrese's client as to minimum income requirements, Appellant's Br. 27 (emphasis in original), the argument is defeated by precedent, see United States v. Kimber, 777 F.3d at 564 ("'The fact that the same offenses could have been committed by a person without the defendant's special training is immaterial.'" (quoting United States v. Fritzson, 979 F.2d at 22)). Calabrese's role as a mortgage broker and his knowledge obtained therefrom did not "merely place[] him in a position where he had the opportunity to commit the offense," Appellant's Br. 28; they increased the conspirators' chances of both succeeding, see United States v. Kimber, 777 F.3d at 564, and avoiding detection, see United States v. Fritzson, 979 F.2d at 22, because Calabrese knew that (1) stated-income loans were not subject to rigorous income and employment

7

verification, and (2) lenders expected that <u>he</u> would identify problems arising from applications that he submitted. Thus, Calabrese's reliance on <u>United States v. Elefant</u>, 999 F.2d 674, 678 (2d Cir. 1993), wherein the defendant's skill had no effect on the commission or concealment of the crime, is entirely misplaced.

Accordingly, the district court's determination that Calabrese's skill significantly facilitated commission or concealment of the bank fraud conspiracy manifests no clear error.

3. <u>Double Counting</u>

Calabrese argues that special skill is "subsumed" within his bank fraud conviction, such that application of the § 3B1.3 enhancement constitutes impermissible double counting. Because Calabrese did not raise this argument in the district court, our review—as he concedes—is for plain error, which we will identify only if: (1) there is error; (2) that is "clear or obvious, rather than subject to reasonable dispute"; (3) that affected the defendant's substantial rights; and (4) that seriously impugns the fairness, integrity, or public reputation of judicial proceedings. <u>United States v. Marcus</u>, 560 U.S. 258, 262 (2010) (internal quotation marks omitted); <u>accord</u> <u>United States v. Kimber</u>, 777 F.3d at 563. Calabrese's challenge fails at the first step of analysis.

The Guidelines preclude a § 3B1.3 enhancement when a defendant's special skill "is included in the base offense level or specific offense characteristic." U.S.S.G. § 3B1.3. Nothing in § 2B1.1(a), which establishes the base offense level for fraud crimes, or § 2B1.1(b), which sets forth enhancements for specific fraud characteristics, references—much less adjusts for—a defendant's status or experience as a mortgage

8

broker or loan officer. Nor is such status an element of (or even a statutorily enumerated means of committing) substantive or conspiratorial bank fraud. See 18 U.S.C. §§ 1344, 1349; see also United States v. Crisci, 273 F.3d 235, 239–40 (2d Cir. 2001) (stating that bank fraud requires proof that defendant (1) engaged in conduct designed to deceive federal financial institution into releasing property, and (2) possessed intent to victimize institution by exposing it to actual or potential loss).

Accordingly, we reject Calabrese's double-counting challenge.[7]

4.  Conclusion

We have considered Calabrese's remaining arguments and conclude that they are without merit. Accordingly, the judgment of the district court is AFFIRMED.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court



A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

---

[7] Even if Calabrese's offense of conviction and use of special skill were premised on the same underlying "course of conduct," as he contends, Appellant's Br. 34, that would not demonstrate that a § 3B1.3 enhancement constitutes "[i]mpermissible double counting . . . in contravention of the applicable statute or Sentencing Guideline," United States v. Reyes, 557 F.3d 84, 86 (2d Cir. 2009) (emphasis added) (internal quotation marks omitted). We have consistently held that double counting is permissible in calculating a Guidelines sentence where, as here, each of the multiple Guidelines sections applicable to a single act serves a distinct purpose or represents a discrete harm. See United States v. Maloney, 406 F.3d 149, 153 (2d Cir. 2005).